## 44070. POPE v. THE STATE.
### (354 SE2d 429)

HUNT, Justice.

Pope was convicted of murder and several other crimes arising out of an armed robbery of a Haralson County drugstore, and was sentenced to death. On direct appeal to this court, the death sentence was vacated for error relating to the death-qualification of the jury, and the case was remanded for a hearing to determine when "the defendant or his attorneys knew of a possible basis for recusal" of the trial judge, which was raised for the first time on appeal. *Pope v. State*, 256 Ga. 195, 214 (26) (345 SE2d 831) (1986).

The basis for recusal stemmed from the discovery by the defense attorneys that, prior to trial, the judge's law clerk had accepted employment with the district attorney who tried this case, and after having accepted this offer of employment, which was to begin on September 1, 1985, the law clerk assisted the trial judge during the August 1985 trial of this case.

We pointed out that the law clerk's " 'continuing participation with the (judge) in a case in which her future employers were counsel gave rise to an appearance of partiality.' " *Pope v. State*, supra at 213.

However, the record before us at the time did not establish when the defendant or his attorneys first learned of this possible basis for recusal, and the case was remanded for a factual determination that would allow us to determine whether or not we should reach the merits of the recusal issue.

On remand, the original trial judge and the district attorney and his staff voluntarily recused themselves. Attorney Mark Kadish volunteered to represent the defendant at the hearing on remand, and the Cobb County district attorney and one of his assistants represented the State. The Honorable Tom Cauthorn, a Cobb County Superior Court judge, was assigned to preside over the hearing.

1. "After the presentation of testimony and argument of counsel on behalf of the State of Georgia and John David Pope, [Judge Cauthorn] made findings of fact and conclusions of fact which are set out as follows [omitting paragraph numbers]:

"This case was begun by indictment in Haralson County in 1984.

"Subsequent to the initial appointment of other attorneys, Gerald P. Word of the Carrollton Bar was appointed by the court to represent the Defendant and Clive Stafford Smith was appointed by the court to assist Mr. Word in the Defendant's representation.

"At the time this case was initiated and at all relevant times thereafter, Christine Daniel was the law clerk for Honorable Arthur W. Fudger, Judge of the Superior Courts of Georgia, Tallapoosa Judicial Circuit.

"At all relevant times herein the trial judge in this case was the

Honorable Arthur W. Fudger.

"On May 20, 1985, Christine Daniel accepted employment with the district attorney's office of the Tallapoosa Judicial Circuit.

"On April 16, 1985, after venue had been changed a discussion took place between the trial judge, the defense attorneys, Honorable W. A. Foster, III, District Attorney of the Tallapoosa Judicial Circuit, and the judge's law clerk, Christine Daniel. On April 16, 1985, Christine Daniel informed the defense attorneys that she was seeking employment with a district attorney's office.

"On one occasion prior to the beginning of trial, Gerald P. Word joked with Christine Daniel and the district attorney about her seeking a job with a district attorney's office.

"On August 20, 1985 during voir dire, Christine Daniel, the district attorney, and the defense attorneys were gathered in an elevator in the Cobb County Courthouse. During the gathering in that elevator, the district attorney joked about the length of the proceedings. He stated to all those present in the elevator that it would be funny that if in the middle of the trial Christine Daniel had to get up and change tables. This statement was in reference to the possible length of the trial and that it might last at some point beyond the time in which Christine Daniel would be the trial judge's law clerk and would become the district attorney's assistant.

"On August 20, 1985 during voir dire Christine Daniel, the defense attorneys, and Kathy Cox, the trial judge's official court reporter, were gathered in an area of the Cobb County Courthouse near the office of Court Administration. During this gathering Christine Daniel and the defense attorneys entered into a discussion regarding her future employment with the district attorney's office of the Tallapoosa Judicial Circuit. Gerald P. Word extended his hand, shook hands with Christine Daniel, congratulated her on becoming employed with the Tallapoosa Judicial Circuit District Attorney's Office and indicated to Christine Daniel that W. A. Foster, the District Attorney, was a fine man. As a part of this discussion, Clive Stafford Smith asked Christine Daniel whether or not she intended to move her residence from Cobb County to the Tallapoosa Judicial Circuit. Christine Daniel told Mr. Stafford Smith that she did not intend to move her residence.

"There is no evidence that the Defendant was present during any of the foregoing discussions nor is there any evidence that the Defendant's attorneys communicated the substance of the foregoing discussions to him.

"In view of the foregoing, this court concludes beyond a reasonable doubt that the Defendant's attorneys knew of a possible basis for the recusal of the trial judge prior to trial, and further, that there is no evidence that the Defendant knew of a possible basis for recusal of

the trial judge prior to trial."

The record supports these findings.

2. The defendant argues his conviction must be reversed because (a) there is no evidence that the defendant, himself, knew of the law clerk's employment agreement until after the completion of the trial, and (b) there is no evidence that his attorneys learned that the trial court's law clerk was going to work for the district attorney trying this case until the second day of voir dire.

(a) We do not agree that the issue in this case involves a constitutional issue of such fundamental importance as to impose a requirement that the defendant himself personally waive the right to file a motion to recuse the trial judge. See *Jacobs v. Hopper*, 238 Ga. 461, 465 (233 SE2d 169) (1977) (Jordan, J., concurring specially) (noting that some rights are so fundamental as to require a personal waiver, made by the defendant voluntarily, knowingly and intelligently — for example, the right to counsel, the right to appeal, and the right to a jury trial).

Here, there was no violation of any of the specific disqualification standards of Canon 3 (C) of the Georgia Code of Judicial Conduct. 251 Ga. 897, 900-01. Rather, the circumstances here were such as to give rise to an appearance of partiality. *Pope v. State*, supra at 213. See Canon 2 of the Georgia Code of Judicial Conduct.

We note that our Canons 2 and 3 are similar to the two federal statutes governing the issue of disqualification of the trial judge. See 28 USCA §§ 144 and 455. Section 455, the more recent statute, is "substantively . . . similar" to but more flexible than § 144. *Phillips v. Joint Legislative Committee*, 637 F2d 1014, 1019-20, n.6 (5th Cir. 1981). "Subsection (a) of section 455 sets out the general policy of disqualification 'in any proceeding in which (the judge's) impartiality might reasonably be questioned.'" *United States v. Nobel*, 696 F2d 231, 233-34 (3rd Cir. 1983). "[S]ubsection (b) . . . enumerates specific disqualification standards . . . ." Ibid. This subsection is meant to be "self-enforcing," and it is the "[trial] judge's duty to disqualify himself as soon as he is aware that the grounds exist." *McCuin v. Texas Power &c. Co.*, 714 F2d 1255, 1259-60 (5th Cir. 1983). No waiver of disqualification under one of the specific disqualifications standards of subsection (b) is possible.[1] *Delesdernier v. Porterie*, 666 F2d 116 (5th Cir. 1982).

However, with regard to § 455 (a), which counsels judges to disqualify themselves in proceedings in which their impartiality might be questioned, waiver is not only allowed by the specific terms of the

---

[1] This non-waiver rule is statutory, and we note that our Canons include a waiver provision with respect to two of the specific disqualification grounds. See Canon 3 (D), 251 Ga. at 901.

statute, but the federal courts have not required a personal waiver by the defendant where his attorney knew of a possible basis for recusal and failed to raise it in a timely manner. See, e.g., *United States v. Slay*, 714 F2d 1093 (11th Cir. 1983).

We find no support for the defendant's present contention that the circumstances here involve a constitutional issue of such fundamental importance as to require a personal, knowing, intelligent, and voluntary waiver on the part of the defendant himself.

(b) The trial court found that although the defense attorneys were aware prior to trial that the law clerk was seeking employment with a district attorney's office somewhere, there is no evidence that they knew the law clerk had *accepted* employment with the district attorney trying *this* case until the second day of voir dire. Thus, the defendant argues that the trial court erred in concluding that Pope's attorneys knew of a possible basis for recusal *prior* to trial. Nonetheless, the knowledge was garnered in time to avoid a "long and costly proceeding," had the recusal issue been raised as soon as a basis therefor was discovered. *Delesdernier v. Porterie*, supra, 666 F2d at 121. Unlike the attorneys in *Hall v. Small Business Admin.*, 695 F2d 175 (5th Cir. 1983), counsel here did not "raise [the] recusal issue at [the] earliest moment after discovering [the] facts." Id. at 179. "[Pope's] disqualification argument is therefore untimely and need not be [further] considered by this Court on appeal." *United States v. Slay*, supra, 714 F2d at 1094.

3. Pope argues that even if a recusal argument relating to the trial, based on the law clerk's acceptance of employment, was untimely, he nonetheless could not have known, and did not know, that the former law clerk was going to assist the district attorney with the drafting of an appellate brief in this case until it was written. He argues that we ought to address this basis for recusal, though it is not clear just whom he would have recused.

That a law clerk leaves a judge's employ and afterwards participates as counsel in a case pending before her judge during her term of service is doubtless improper,[2] but standing alone hardly calls for a post-trial recusal of the original trial judge from the original trial.

On the other hand, the recusal of the former law clerk from the original appeal would at this point only require the district attorney to draft another brief, this time without the assistance of the former

---

[2] See *Fredonia Broadcasting Corp. v. RCA*, 569 F2d 251, 255 (5th Cir. 1978). See also Georgia Code of Professional Responsibility EC 9-3, 252 Ga. at 637: "After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists." See also DR 9-101, 252 Ga. at 637-38.

law clerk. This would be an exercise in redundancy, accomplishing nothing meaningful or beneficial to the defendant.

The truth is, here the state enjoyed no advantage on appeal from the fact that one of its appellate attorneys had previously participated in the case as the law clerk for the trial judge. Given the nature of appellate review, the former law clerk simply could not have been privy to any information that could have given the state an unfair advantage on appeal. Cf. *Watson v. United States*, 508 A2d 75, 85 (D.C. Cir. 1986) (motion for rehearing en banc granted, 514 A2d 800) ("[I]t is the unusual appeal whose outcome depends upon exceptional skill of counsel because even a poor appellate argument is met with incisive consideration by the appellate court, where deliberation and review are undertaken to the extent necessary for considered decision.")

4. The convictions are affirmed. As noted previously, *Pope v. State*, supra, 256 Ga. at 214, the death sentence imposed on the murder count is reversed.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED APRIL 15, 1987.

*Michael Mears*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General*, for appellee.