## A01A0796. JOHNSON v. THE STATE.
### (550 SE2d 113)

MILLER, Judge.

A jury convicted Ricky Charles Johnson of selling cocaine. Prior to trial, the State notified Johnson it would seek the imposition of a recidivist sentence under OCGA § 17-10-7 (a). Following the denial of his motion for new trial, Johnson filed this appeal. Johnson now asserts six reasons to reverse his conviction: a biased trial judge, ineffective counsel, insufficient evidence, and three erroneous evidentiary rulings during his trial. After review of these issues, we affirm.

When viewed in a light most favorable to the verdict, the evidence established that during an undercover drug operation, Johnson sold five bags of cocaine for $50. This drug transaction occurred in a motel room and was captured on a videotape shown to the jury at trial. On the night of the sale, a member of a narcotics task force, Special Agent Tasha Norris Peterson, was working undercover in tandem with "LA," a confidential informant. After accompanying Agent Peterson to a local motel, LA telephoned Johnson, who came there later. Peterson personally saw LA hand over $50 to Johnson in exchange for five small pieces of crack cocaine that Johnson removed from a pill bottle. Prior to Johnson's arrival, Peterson concealed a videotape camera. Peterson was questioned in considerable detail about parts of the video.

After being arrested and placed in custody, Johnson initialed a waiver of rights form and admitted to Agent Randall Snyder and Sergeant Randy Munday that he had, in fact, sold $50 worth of crack cocaine to LA. At trial, Snyder and Munday described Johnson's demeanor, appearance, as well as the context and content of Johnson's incriminating comments. A crime lab technician conducted a chemical analysis of the subject of the sale and confirmed it as being cocaine.

At the sentencing phase, the State presented certified copies of Johnson's prior convictions which included financial card transaction theft, robbery, aggravated battery, possession of cocaine, and sale of marijuana. Johnson was sentenced as a recidivist.

1. Johnson contends that his rights to due process and to a fair trial and a fair hearing were violated because the trial judge was

biased against him. In support of this allegation, Johnson points to three incidents: a colloquy between the trial court and the jury foreman after the jury deadlocked in his first trial, the court's refusal to cooperate with scheduling a post-trial deposition of his trial counsel, and the court's frequent interruptions of his lawyer during the motion for new trial hearing.

Motions to recuse must be timely and made as soon as the facts demonstrating the basis for disqualification become known.[1] Uniform Superior Court Rule 25.1 requires that such motions must be made "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification," unless good cause is shown. If Johnson was aware of a possible basis for recusal, he had no right to sit back, hope for a favorable outcome at trial or sentencing or at the motion hearing, and then raise the issue for the first time on appeal.[2] Absent the filing of a timely recusal motion accompanied by a legally sufficient affidavit, such motion is subject to denial on its face.[3] Here we have neither. After the first trial ended in a mistrial, Johnson did not file a recusal motion. Nor did Johnson file a recusal motion between the second trial and the motion hearing. At no time was an affidavit filed. Consequently, he waived any objection to the judge's presiding over his second trial or over the motion hearing.[4]

Johnson argues that this rule should not apply here because neither he nor his counsel became aware of the colloquy between the trial court and the jury foreman until after the motion hearing. Even if true, Johnson has not shown the requisite harm and error needed for reversal.[5] After declaring a mistrial and alarmed by certain remarks of the foreman, the judge decided to investigate whether a juror had violated his oath and whether a juror had refused to enter a guilty vote out of fear of reprisal. After conferring with the jurors, in order to alleviate a concern posed by a juror, the trial judge offered an opinion that since the State routinely retries cases, it would likely retry this one. That opinion was not indicative of any personal bias or prejudice toward the defendant. Nor did the comment show bias of such nature and intensity as to have prevented Johnson from obtaining a trial or a hearing " ' "uninfluenced by the court's [prejudice]." ' "[6] Because Johnson failed to raise the issue of trial court recusal at the earliest moment within the meaning of *Pope v. State*,[7]

[1] *Pope v. State*, 256 Ga. 195, 214 (26) (345 SE2d 831) (1986).

[2] *Gillman v. State*, 239 Ga. App. 880, 884 (2) (b) (522 SE2d 284) (1999).

[3] *Daker v. State*, 243 Ga. App. 848, 855 (21) (533 SE2d 393) (2000).

[4] See *In the Interest of C. C. C.*, 188 Ga. App. 849, 850 (374 SE2d 754) (1988).

[5] *Ellis v. State*, 235 Ga. App. 837, 838 (4) (510 SE2d 127) (1998).

[6] *Birt v. State*, 256 Ga. 483, 486-487 (4) (350 SE2d 241) (1986).

[7] 257 Ga. 32, 35 (2) (b) (354 SE2d 429) (1987).

this issue was not preserved for appellate review.[8]

The transcript, moreover, discredits an unsubstantiated allegation that the trial court foreclosed or curtailed the presentation of the ineffectiveness claim. While Johnson's trial counsel was being questioned during the motion hearing, the trial court interjected this observation: "I mean, how can somebody — and the Court of Appeals will decide this, but this is ridiculous for somebody to have a contract to pay an attorney and then fail to pay the attorney, doesn't pay the attorney, then comes in and complains about what the attorney did for them. I don't think the guy's got standing. But go ahead, please." The court emphasized, however, that this opinion "is not going to affect the ruling at all." The examination of trial counsel then resumed. After Johnson testified, conceding that she had no further witnesses, counsel then articulated all the reasons forming the legal basis for the motion. Thus, the record does not substantiate this claim.

2. Asserting five reasons, Johnson contends that the trial court erred in denying his motion for new trial on ineffectiveness grounds.

To establish an ineffective assistance of counsel claim, an appellant must show not only that his trial counsel's performance was deficient but also that the deficient performance prejudiced his defense.[9] Failure to satisfy both requirements is fatal to an ineffectiveness claim.[10] Also, unless the trial court's ruling on an ineffectiveness claim is clearly erroneous, it must be affirmed.[11] With those rules in mind, we now consider each purported deficiency.

(a) Johnson claims that he was not told about the range of punishment or informed of the State's intent to introduce his prior convictions in aggravation. Counsel testified that he had a "very serious discussion" with Johnson about negotiating a plea because, in his view, the evidence against Johnson was "compelling." Despite this advice, Johnson insisted on proceeding to trial. Johnson failed to offer any evidence to show that he had not been fully informed about the possible sentence upon conviction. Even if the evidence demanded a finding that Johnson's attorney failed to inform him of the consequences of being sentenced as a repeat offender, that failure does not amount to ineffective assistance of counsel.[12]

(b) Johnson argues that his trial counsel failed to file a motion to compel the identity and location of the confidential informant.

---

[8] *Harris v. State*, 202 Ga. App. 618, 623 (7) (414 SE2d 919) (1992).

[9] *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).

[10] *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

[11] See *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).

[12] *Gary v. State*, 244 Ga. App. 577, 578 (536 SE2d 220) (2000); see *Williams v. Duffy*, 270 Ga. 580, 582 (1) (513 SE2d 212) (1999).

According to his trial counsel, although the information was requested but was not disclosed, he did not pursue the issue because "Mr. Johnson knew this individual."

(c) Johnson claims that his counsel did not file any discovery motions or prepare any jury charges. However, his counsel explained that under the district attorney's open file policy, he had access to and reviewed the entire file. As to the jury charges, defense counsel explained that as a result of a charge conference, the instruction encompassed what "the defense wished."

(d) Johnson complains that neither his brother, Kenneth Jones, nor his girlfriend, Victoria Byrd, were called to testify as witnesses. Defense counsel was not able to recall that Johnson had sought his girlfriend's testimony. In any event, since neither Jones nor Byrd had been present during the drug sale, and Johnson admitted that he did, in fact, appear, on the incriminating videotape, it is unclear how either person's testimony could have assisted his defense.

(e) Johnson claims that his counsel failed to obtain a copy of the transcript from the prior trial to enable him to explore inconsistencies in the testimony of witnesses. Defense counsel explained that no copy of the transcript from the first trial was obtained because Johnson failed to pay the court reporter and because he did not consider a copy of that transcript to be essential for the retrial.

3. Johnson contends that the evidence was insufficient to sustain the verdict. On the contrary, an undercover officer testified that she witnessed Johnson sell five pieces of crack to LA, a concealed camera captured the drug transaction on tape, and Johnson confessed to selling the drugs.[13] This evidence was sufficient within the meaning of *Jackson v. Virginia*[14] to sustain the jury's verdict.

4. Johnson claims that his confession was improperly admitted into evidence. The trial court held a *Jackson-Denno* hearing and determined that Johnson's oral statement was preceded by appropriate *Miranda* warnings and was voluntary.[15] The record supports that determination. Since Johnson did not establish that the trial court clearly erred in finding that the confession was voluntary and admissible, no error occurred in permitting its admission.[16]

5. Johnson contends that the trial court erred in allowing the contraband into evidence because a proper chain of custody was not established. When the State's Exhibit 2, a clear plastic bag containing five small pieces of cocaine, was offered into evidence, defense

---

[13] See *Robinson v. State*, 164 Ga. App. 652, 654 (1) (297 SE2d 751) (1982) (sale of drugs complete when seller delivers the drugs to the feigned buyer).

[14] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[15] *Jowers v. State*, 245 Ga. App. 773, 775 (5) (538 SE2d 853) (2000).

[16] *Gadson v. State*, 197 Ga. App. 315, 316 (1) (398 SE2d 409) (1990).

counsel voiced no objection, noting, "I think we just had the chain of custody [shown]." Therefore, this issue must be considered waived.[17]

6. Johnson asserts that the trial court erred in admitting the videotape into evidence over objection. Defense counsel objected to the introduction of the tape on the ground that it was not the same tape as had been introduced at the earlier trial. The prosecutor then explained that this videotape was the original and that "at the time of the last trial, we didn't have access to a recorder that played these 8mm tapes, so we had to copy it over to . . . a standard size VCR tape that we had in the last trial." After defense counsel was permitted to view it outside the presence of the jury, no further objection was made.

Pretermitting consideration of whether the issue of the tape's admission was, in fact, preserved, we find no error.[18] Peterson, a witness to the events, identified the tape as the original recording of the crime scene and testified that it was a true and accurate depiction of what occurred that night. This was sufficient foundation for the tape's admission.[19] Although Johnson now claims that the videotape "had been altered, modified, and certain of the events were deleted," Johnson has not offered a shred of evidence to support those allegations. Even assuming that scenes on the video appear somewhat blurry or the quality of the videotape is less than exemplary, such deficiencies merely go to the weight of the evidence and not to its admissibility.[20]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED JUNE 8, 2001 —
RECONSIDERATION DENIED JUNE 28, 2001 — ■

*Arleen Evans,* for appellant.
*William T. McBroom III, District Attorney, Robert H. English, Assistant District Attorney,* for appellee.

---

[17] *Newton v. State,* 226 Ga. App. 501, 503 (3) (486 SE2d 715) (1997).
[18] See *Godfrey v. State,* 227 Ga. App. 576, 577 (2) (489 SE2d 364) (1997) (entirely new basis for objecting to evidence cannot be raised and argued on appeal).
[19] *Harper v. State,* 213 Ga. App. 444, 447-448 (4) (445 SE2d 303) (1994).
[20] *Ellison v. State,* 242 Ga. App. 636, 637 (4) (530 SE2d 524) (2000).