**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 25, 2012**

# In the Court of Appeals of Georgia

A12A1124. HORNE v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Curtis Horne[1] was convicted of possession of cocaine with intent to distribute (OCGA § 16-13-30 (b)), violation of the Georgia Safety Belt law (OCGA § 40-8-76.1 (b)), and driving without a license (OCGA § 40-5-20 (a)). Horne filed a motion for new trial, which the trial court denied. On appeal, Horne contends that (i) the evidence was insufficient to sustain his drug conviction; (ii) the

---

[1] Horne appeared pro se at trial and in this appeal. Although Horne had been appointed a public defender for the trial proceedings, he elected to terminate the public defender's representation and to proceed pro se. Horne also was appointed counsel to assist in pursuing his post-conviction motion for new trial and appeal. After the instant appeal was docketed, however, Horne requested that appellate counsel withdraw from representation, and that he be allowed to represent himself pro se on appeal. In accordance with Horne's request, Horne's appellate counsel filed a motion to withdraw, which this Court granted. Thereafter, Horne filed his pro se appellant's brief and enumeration of errors.

evidence failed to establish a proper chain of custody; (iii) the trial court erred in denying his motion to suppress since his arrest and the warrantless search of his car were illegal; (iv) the trial court erred in allowing him to represent himself at trial; (v) the trial court failed to properly respond to a jury question; (vi) the trial court erred in imposing recidivist sentencing; (vii) the trial judge erred in failing to recuse himself; and (viii) his appellate counsel provided ineffective assistance. Discerning no error, we affirm.

On appeal, this Court must view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence; we determine the sufficiency of the evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). "Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *McCombs v. State*, 306 Ga. App. 64, 65 (2) (701 SE2d 496) (2010).

So viewed, the trial evidence shows that on the evening of July 24, 2008, an officer with the Richmond County Sheriff's Office was conducting routine patrol when he observed Horne driving his vehicle on the roadway. The officer testified that when Horne passed by, he could see that Horne was not wearing a seatbelt, and that the seatbelt was hanging in the driver's side door. The officer initiated a traffic stop of Horne's vehicle due to the seatbelt violation.

During the traffic stop, the officer requested Horne's driver's license. Horne informed the officer that he did not have a driver's license with him, but provided the officer with his name and date of birth. The officer ran a computer check using Horne's information, which revealed that Horne did not have a valid driver's license, and that his license had been suspended since 1997. As a result of the violation, the officer placed Horne under arrest. The officer directed Horne to step out of his vehicle and to place his hands on the roof of the vehicle. As Horne exited the vehicle, the officer observed Horne reach his hand into his pants pocket, pull out a clear bag, and place the bag in the doorjamb of the vehicle. After the officer handcuffed Horne and secured him in the back of the patrol car, the officer returned to Horne's vehicle and retrieved the bag from the doorjamb.

The officer observed that the bag contained substances that were divided into two separate individual baggies. The officer performed field tests and weighed the substances, which confirmed that the substance in one baggie was 13.1 grams of crack cocaine and the substance in the other baggie was 7.5 grams of powder cocaine. The officer testified that based upon his experience and training, the quantity and separate packaging of the cocaine indicated that it was not for personal use, but rather, was intended for distribution.

The officer sealed the baggies of cocaine in an evidence bag and deposited the evidence bag into a secured evidence safe for transport to the Georgia Bureau of Investigation ("GBI") Crime Lab. The GBI Crime Lab testing revealed that the drug substances were positive for cocaine.

Horne was subsequently indicted, tried, and convicted of the drug and traffic offenses.

1. Horne contends that the evidence was insufficient to sustain his conviction for possession of cocaine with intent to distribute. He argues that others had equal access to the vehicle where the drugs were found, and that the evidence was insufficient to prove an intent to distribute the drugs. His arguments are without merit.

"Possession of cocaine may be joint or exclusive, actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Punctuation and footnotes omitted.) *Thomas v. State*, 291 Ga. App. 795, 797 (1) (662 SE2d 849) (2008). Here, the evidence was sufficient to show that Horne had actual possession of the cocaine. In this regard, the officer testified that he observed Horne handling the bag of cocaine as he removed it from his pants pocket and attempted to hide it in the vehicle's doorjamb. Horne's arguments challenging the officer's credibility are unavailing. Determinations regarding the credibility of witnesses and the resolution of conflicts in the evidence are within the sole province of the jury and afford no basis for reversal on appeal. See id. at 797-798 (1); *Gaston v. State*, 257 Ga. App. 480, 482 (1) (571 SE2d 477) (2002).

Moreover, Horne's reliance upon the equal access rule is misplaced.

The equal access rule, as it applies in the automobile context, is merely that evidence showing that a person or persons other than the owner or driver of the automobile had equal access to contraband found in the automobile may or will, depending upon the strength of the evidence, overcome the presumption that the contraband was in the exclusive possession of the owner or driver. However, equal access is merely a defense available to the accused to whom a presumption of possession flows. Where the State did not show the indicia giving rise to the presumption, that is, ownership or exclusive control of the vehicle, no

5

> presumption arose and therefore there was no triggering of the equal access defense. . . . Moreover, the equal access rule applies only where the sole evidence of possession of contraband found in the vehicle is the defendant's ownership or possession of the vehicle.

(Citations and punctuation omitted.) *Hight v. State*, 293 Ga. App. 254, 258 (5) (666 SE2d 678) (2008). Here, the State did not rely upon a presumption that the cocaine was in Horne's possession based upon his status as the driver of the vehicle. Rather, the State relied upon direct evidence that Horne had actual possession of the cocaine by handling and attempting to hide it. Under these circumstances, the equal access rule was inapplicable. See, e.g., *Thomas*, supra, 291 Ga. App. at 798 (2).

The evidence also was sufficient to support a finding that the cocaine was intended for distribution.

> It is true that mere possession of cocaine, without more, will not support a conviction for possession with intent to distribute. But additional evidence may support proof of intent to distribute, including the packaging of the contraband . . . and expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than for personal use.

(Citations and punctuation omitted.) *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998). The officer opined that the amount of cocaine in Horne's

6

possession was greater than that normally kept for personal use, and was separately packaged for distribution. Based upon this evidence, the jury was authorized to find that Horne possessed the cocaine with intent to distribute. See id. at 730-731 (1).

2. Horne further argues that the drug evidence should have been excluded since the State failed to establish a proper chain of custody.[2] We disagree.

> In order to show a chain of custody adequate to preserve the identity of fungible evidence, the [S]tate must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The [S]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.

(Citations and punctuation omitted.) *Sanders v. State*, 243 Ga. App. 216, 217 (1) (534 SE2d 78) (2000).

The evidence showed that upon retrieving and field testing the cocaine, the officer sealed the cocaine in an evidence bag with tamper resistant tape, followed procedures for filling out a property receipt, and deposited the evidence bag into a

---

[2] Notably, when the State presented the investigator's testimony to establish the chain of custody, Horne objected on the grounds that the testimony was "just a waste of time" and "ha[d] nothing to do with the case." The State explained that the testimony was relevant to prove the chain of custody, and the trial court overruled Horne's objection.

secured drug safe maintained by the Narcotics Division. An investigator with the Narcotics Division explained that the evidence bag contained an integrity seal that could not be removed without tearing the bag. The investigator further explained that the property receipt was used to track the property, and that each person who took custody of the evidence was required to sign the property receipt. The investigator stated that after the evidence bag was deposited into the drug safe, she removed the evidence bag and transported it to the GBI Crime Lab for testing, as noted on the property receipt. Upon delivering the evidence bag to the GBI Crime Lab, the property receipt was stamped with the date and time to reflect the delivery and was placed in a locker that was accessible only to the GBI Crime Lab technicians. A forensic drug chemist from the GBI Crime Lab testified that when the evidence bag was received at the lab, a bar code label was attached to further track the custody of the drug evidence at the lab. The chemist retrieved the evidence bag from the GBI Crime Lab locker and tested the drug substance.

The foregoing evidence sufficiently established that at every point, the cocaine evidence was clearly marked and well secured. No evidence of tampering was presented, and the evidence showed with reasonable certainty that the substance

tested was the same as that seized.[3] Thus, the chain of custody requirement was satisfied. See *Maldonado v. State*, 268 Ga. App. 691, 691-695 (1) (603 SE2d 58) (2004); *Sanders*, supra, 243 Ga. App. at 217-218 (1) (a).

3. Next, Horne argues that the trial court erred in denying his motion to suppress since his arrest and the warrantless search of his car were illegal. Again, no error has been shown.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept the court's credibility assessments unless clearly erroneous. The trial court's

---

[3] Although Horne points to evidence that the officer failed to place his initials on the sealed evidence bag, such does not require a different outcome. Significantly, the evidence nevertheless established that the officer had sealed the evidence bag, and that it remained sealed until it was tested at the GBI Crime Lab. Also unavailing is Horne's contention that the evidence reflected a disparity in the weight of the cocaine that was tested. The officer testified that the cocaine and packaging had a total weight of 20.6 grams. The GBI Crime Lab report reflected that the cocaine weighed approximately 17 grams. The officer and chemist explained that the weight difference was due to the fact that the officer had weighed the cocaine while it was in the package, whereas the chemist had taken the cocaine out of the package to obtain its weight. The trial court was authorized to conclude that the difference in the field weight and the lab weight was not sufficiently material to require the exclusion of the evidence. See *Maldonado v. State*, 268 Ga. App. 691, 695 (1) (603 SE2d 58) (2004).

application of law to undisputed facts, however, is subject to de novo review.

(Citation omitted.) *Sommese v. State*, 299 Ga. App. 664, 665 (683 SE2d 642) (2009). "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." (Citations omitted.) *Souder v. State*, 301 Ga. App. 348, 349 (1) (687 SE2d 594) (2009).

At the motion to suppress hearing, the only witness presented was the officer who conducted the traffic stop. The officer's testimony at the hearing was essentially the same as his testimony at trial, as set forth above. In this regard, the officer testified that he stopped Horne's vehicle upon observing that Horne was committing a seatbelt violation under OCGA § 40-8-76.1 (b). At the time of the stop, Horne advised the officer that he did not have his driver's license with him. Horne provided his name and date of birth, which the officer ran in a computer check. The results of the computer check reflected that Horne did not have a valid driver's license. The officer advised Horne to step out of his vehicle and that he was being placed under arrest. As Horne stepped out of his vehicle, the officer observed Horne reach into his pants pocket, pull out a plastic bag, and place the bag into the vehicle's doorjamb. The

officer handcuffed Horne, secured Horne in the back of the patrol car, and went back to retrieve the bag that Horne had attempted to hide in the doorjamb.

Based upon the officer's testimony at the hearing and at trial, the traffic stop, arrest, and search were lawful.

> When a police officer makes a traffic stop based on his having a clear view of the occupants of the front seat of a vehicle not wearing their seat belts, he is in the same situation as a police officer making a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 [(88 SC 1868, 20 LE2d 889)] (1968), except that the initial stop is based on probable cause, not just a reasonable and articulable suspicion that an individual is, or is about to be, engaged in criminal activity. While the probable cause for the initial stop cannot itself be used as probable cause for arrests based on violations of other Code sections, once a stop for a seat belt violation is made, the language of OCGA § 40-8-76.1 does not preclude an officer from conducting a reasonable inquiry and investigation to insure both his safety and that of others.

(Citation and punctuation omitted.) *Davis v. State*, 232 Ga. App. 320, 321 (1) (501 SE2d 836) (1998). Accordingly, when the officer observed Horne's seatbelt traffic violation, he was authorized to initiate a traffic stop. See id.; see also *Clark v. State*, 305 Ga. App. 699, 700 (1) (700 SE2d 682) (2010) (officer's observation that defendant was not wearing a seat belt supported traffic stop). Thereafter, the officer

was authorized to make a reasonable inquiry and investigation following the initial stop. See *Davis*, supra, 232 Ga. App. at 322 (1). When the officer learned that Horne did not have a valid driver's license, the officer had probable cause to arrest Horne for driving without a license.[4] See *Edge v. State*, 269 Ga. App. 88, 89 (603 SE2d 502) (2004). Since Horne's offense of driving without a license provided independent support for the arrest, the arrest was lawful. See *Edge*, supra, 269 Ga. App. at 89; see, e.g., *Davis*, supra, 232 Ga. App. at 322 (1).

Under the "automobile exception" to the warrant requirement imposed by the Fourth Amendment, a police officer may search a car without a warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant. Because there is no exigency requirement in this context, the warrantless search of an automobile will be upheld so long as there was probable cause to suspect it contained contraband, even if the driver was arrested and handcuffed and the keys were taken from him before the car was searched. . . . Probable cause to search an

___

[4] Notably, at the motion hearing, the officer also testified that the computer check reflected that there was an active warrant for Horne's arrest. "[A] radio transmission that confirms an outstanding warrant establishes the necessary probable cause to arrest[.] . . . Whether or not the information about the warrant later proved incorrect or invalid is immaterial." (Citations and punctuation omitted.) *Howard v. State*, 273 Ga. App. 667, 668 (1) (615 SE2d 806) (2005). Accordingly, the active warrant reported during the check provided an alternate basis of probable cause for Horne's arrest.

12

automobile exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law.

(Citations and punctuation omitted.) *State v. Sarden*, 305 Ga. App. 587, 589 (699 SE2d 880) (2010).[5] "Observation of what reasonably appear to be furtive gestures is a factor which may properly be taken into account in determining whether probable cause exists [for a vehicle search]." (Citations omitted.) *State v. Menezes*, 286 Ga. App. 280, 283 (2) (648 SE2d 741) (2007). After the officer observed Horne's furtive movements of reaching into his pants pocket, retrieving the plastic bag, and efforts to conceal the bag in the doorjamb, the officer had probable cause to search the vehicle for suspected drug contraband. See, e.g., id.; see also *Sarden*, supra, 305 Ga. App. at 589-590 ("The officer's observation of what he suspected, based upon his law enforcement experience, to be crack cocaine, would have led a reasonably discrete

---

[5] Horne's reliance upon the ruling of *Arizona v. Gant*, 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009), is misplaced. *Gant* applies in the context of a search incident to arrest, "[b]ut the automobile exception is a separate and distinct rationale for upholding the search of a vehicle under the Fourth Amendment." (Citation and punctuation omitted.) *Sarden*, supra, 305 Ga. App. at 589, n. 1. *Gant* otherwise reaffirmed the automobile exception, providing that if there is probable cause to believe a vehicle contains evidence of criminal activity, an officer is authorized to search any area of the vehicle in which the evidence might be found. *Gant*, supra, 556 U.S. at 347 (IV); *Sarden*, supra, 305 Ga. App. at 589, n. 1.

13

and prudent person to believe that drug contraband was in the car.") (citations and footnote omitted); *Martinez v. State*, 303 Ga. App. 166, 171 (2) (2010) (based upon their observations, the officers had probable cause to believe that drug contraband was in the truck and authorized the search of the truck under the automobile exception).

Horne nevertheless contends that the arrest and search were unlawful based upon conflicts in the officer's affidavit for the arrest warrant, which stated that Horne had pulled the bag of cocaine from his pants pocket and handed it to the officer. However, the conflict in the officer's statements was a matter affecting the officer's credibility as a witness, which was for the judge's resolution in reaching a decision on the motion to suppress. See *Rogers v. State*, 155 Ga. App. 685, 686 (2) (272 SE2d 549) (1980) ("Credibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony is solely the province of the judge on a motion to suppress.") (citations omitted). Notwithstanding the conflict, the hearing and trial testimony supported the denial of the motion to suppress, and therefore, the trial court's decision was not erroneous. See *Souder*, supra, 301 Ga. App. at 350 (1), n. 3.

14

4. Next, Horne asserts that the trial court erred in refusing to appoint him counsel at the motion to suppress hearing and in allowing him to represent himself at trial. We disagree.

The record in this case shows that Horne was initially represented by public defenders, but he terminated their representation on at least three occasions prior to trial. Horne filed his own defense motions, including his motion to suppress, as a pro se defendant. Prior to the commencement of the motion to suppress hearing, however, Horne indicated that he wanted to have counsel. The State objected and asserted that Horne's request was merely a delay tactic. The trial court proceeded with the hearing, at which time Horne represented himself and was allowed to engage in witness cross-examination and present arguments in support of his motion. The trial court advised Horne that he could obtain counsel for trial and directed the public defender to speak to Horne again about providing legal representation.

When the trial commenced, Horne was represented by a public defender, who conducted jury selection on Horne's behalf. After the jury was selected, however, Horne again advised the trial court that he wanted to represent himself. The trial court noted that Horne had been inconsistent and had terminated his appointed counsel on several prior occasions. The trial court advised Horne that if he insisted upon self-

15

representation, he would be required to question the witnesses and make legal objections notwithstanding his lack of legal training or knowledge. Horne was advised of the nature of his charges and the possible punishment that he faced upon conviction. Horne nevertheless confirmed that he wanted to represent himself during the trial. In accordance with Horne's request, the trial court entered an order allowing Horne to again terminate his counsel, finding that Horne had made a voluntary and knowing waiver of his right to counsel. The trial court nevertheless required the public defender to stand by to assist Horne during the trial.

Horne now argues that the trial court erred in allowing him to represent himself during the proceedings without warning him of the dangers of self-representation. His argument is without merit.

As pronounced in *Faretta v. California*, 422 U.S. 806 (95 SC 2525, 45 LE2d 562) (1975), defendant has the right of self representation. See *Wayne v. State*, 269 Ga. 36, 37-38 (2) (495 SE2d 34) (1998). However,

> a defendant cannot exercise this right unless it is shown that he has adequately waived his right to counsel. . . . [Accordingly,] the record should reflect a finding of the trial court that the defendant has validly chosen to proceed pro se and that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.

16

(Citations and punctuation omitted.) Id. at 38 (2).

Here, the trial court made a finding that Horne had made an informed and voluntary choice to relinquish his right to counsel, and the record supports the trial court's finding. Given the timing of Horne's request for counsel at the motion to suppress hearing, the trial court could have concluded that the request was a dilatory tactic. See, e.g., *Mondragon v. State*, 270 Ga. App. 780, 781-782 (607 SE2d 914) (2004). The trial court had repeatedly informed Horne of the dangers of his self-representation, noting that Horne did not know the court rules and procedures. Prior to Horne's election at trial, he also was advised of the nature of his charges and the possible punishment that he faced upon conviction. Horne nevertheless insisted that he wanted to terminate his appointed counsel and to represent himself in the case. "The record further shows that [Horne] was familiar with the legal system and legal representation as a criminal defendant with [four] prior criminal convictions; he had experience with the criminal legal process and understood the consequences of criminal conviction." (Citation, punctuation, and footnote omitted.) *Brooks v. State*, 243 Ga. App. 246, 249 (1) (a) (ii) (532 SE2d 763) (2000). The record as a whole sufficiently established that Horne was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. See

17

*Wayne*, supra, 269 Ga. at 38 (2); *Mondragon*, supra, 270 Ga. App. at 781-782; *Brooks*, supra, 243 Ga. App. at 248- 250 (1) (a).

Horne nevertheless asserts that the trial court failed to make an appropriate inquiry as to whether he knowingly and intelligently waived his right to counsel. In this regard, Horne contends that the trial court did not establish that the waiver was "made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter." See *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996). Contrary to Horne's assertion, "it is not incumbent upon a trial court to ask each of the questions set forth in *Prater*. The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Citations and punctuation omitted.) *Wayne*, supra, 269 Ga. at 38 (2). As previously stated, the record sufficiently established Horne's knowing and intelligent waiver of his right to counsel in this case.

5. Horne argues that the trial court failed to properly respond to a jury question. During their deliberations, the jury sent questions inquiring as to whether there was

18

a legal weight limit required to support the charge for possession with intent to distribute.[6] In response, the trial court advised the jury that "[t]here [was] no legal limit (grams) for the accused to be charged with intent to distribute." Horne argues that the trial court should have responded by charging the jury as to his equal access defense, and that the trial court erred in failing to do so.

Contrary to Horne's argument, a jury charge on equal access would not have been responsive to the jury's questions. Moreover, as stated in Division 1 above, the equal access rule did not apply in this case. As reflected in the trial court's response to the jury's questions, OCGA § 16-13-30 (b) does not specify a legal weight limit for the offense of drug possession with the intent to distribute. Rather, various kinds of additional evidence may be considered as proof of intent to distribute, including circumstances regarding the packaging of the contraband and expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than personal use. See *Haywood v. State*, 301 Ga. App. 717, 719 (1) (689 SE2d 82) (2009); *Burse*, supra, 232 Ga. App. at 730 (1). No error has been shown in the trial court's response to the question posed by the jury.

---

[6] The jury's questions specifically asked, "What is the legal weight for intent?" and "What is the legal limit (grams) for the accused to be charged with intent to distribute?"

19

6. Horne further contends that the trial court erred in imposing recidivist sentencing.[7]

OCGA § 17-10-7 (a) and (c) pertinently provide that recidivist defendants "shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted" and "shall not be eligible for parole until the maximum sentence has been served." Prior to trial, the State served notice of its intent to seek recidivist punishment under OCGA § 17-10-7 (a) and (c) based upon Horne's four prior felony convictions entered in 1986, 1994, 1997, and 2000. During the sentencing proceeding, certified copies of Horne's prior felony convictions were introduced and admitted into evidence. Horne, however, objected to the admission of his prior felony convictions and presented arguments that collaterally attacked the validity of the guilty pleas upon which the prior convictions were entered.

When a defendant collaterally attacks the validity of a prior guilty plea being used by the State for recidivist sentencing in a subsequent proceeding,

---

[7] In light of Horne's status as a recidivist offender, the trial court imposed the maximum sentence of 30 years without parole for Horne's drug offense under OCGA §§ 16-13-30 (d), 17-10-7 (a) and (c).

the burden is on the State to prove both the existence of the prior guilty pleas and that the defendant was represented by counsel in all felony cases[.] . . . Upon such a showing, the presumption of regularity is then applied and the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Defendant can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence. A silent record or the mere naked assertion by an accused that his prior counseled plea was not made knowingly and intelligently is insufficient.

(Citations and punctuation omitted.) *Nash v. State*, 271 Ga. 281, 285 ( 519 SE2d 893) (1999); see also *Smith v. State*, 260 Ga. App. 785, 787 (581 SE2d 349) (2003).

Here, the State's evidence served as sufficient proof of the existence of Horne's prior guilty pleas, and that Horne was represented by counsel when those please were taken. Although Horne asserted that he had been granted a new trial which remained pending in his 1997 case, he failed to present any affirmative evidence of such. At the motion for new trial hearing, his counsel advised the trial court that he had reviewed the transcript from the 1997 proceedings and that Horne's assertion was incorrect.[8]

---

[8] Horne also incorrectly asserts that the trial court had previously ruled that the State could not rely upon his convictions that were more than ten years old for purposes of the recidivist sentencing. Contrary to Horne's argument, the trial court had ruled that those convictions could not be introduced as impeachment evidence

21

Horne's counsel confirmed that the trial court had entered a final written order that denied the motion for new trial. Regardless, the evidence of record established that Horne had more than three felony convictions based upon his guilty pleas, and Horne failed to show any infringement of his rights or procedural irregularities in his guilty pleas. Therefore, the trial court's imposition of a recidivist sentence in the instant case was proper. See OCGA § 17-10-7 (c); *Reedman v. State*, 265 Ga. App. 162, 169-170 (14) (593 SE2d 46) (2003).

7. Horne argues that the trial judge erred in failing to grant his motion for recusal and in failing to transfer his motion to a different judge for a ruling. We are unpersuaded.

Uniform Superior Court Rule ("USCR") 25.1 pertinently provides that

[a]ll motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be timely filed: in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded. Filing and presentation to the judge shall be not later than five (5) days after the affiant first learned of the alleged grounds for disqualification, . . . unless good cause be shown for failure to meet such time requirements.

at trial; the trial court's ruling did not impact the State's ability to present the convictions as a basis for recidivist sentencing, which was a separate matter, as acknowledged by Horne's counsel at the motion for new trial hearing.

22

(Punctuation omitted.); see also *Johnson v. State*, 250 Ga. App. 245, 246 (1) (550 SE2d 113) (2001) (motions to recuse must be timely filed within five days after the facts demonstrating the basis for disqualification become known, unless good cause is shown). If a defendant is aware of a possible basis for recusal, he cannot sit back, hope for a favorable outcome at the motion hearing or at trial, and then raise the issue after receiving an unfavorable ruling. See *Johnson*, supra, 250 Ga. App. at 246 (1). "Absent the filing of a timely recusal motion accompanied by a legally sufficient affidavit, such motion is subject to denial on its face." (Footnote omitted.) Id.

Horne filed his motion to recuse on December 4, 2008, after the trial court denied his motion to suppress. Horne's motion was not accompanied by the required affidavit, but generally alleged that the trial judge could not be fair since the trial judge had previously presided over another case involving Horne and had "allowed [the] police to lie" at the suppression hearing. As an initial matter, "[t]he fact that the judge has sat on prior cases of the party or ruled on prior matters in the case before the judge is legally insufficient as a grounds for recusal." (Citations and punctuation omitted.) *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997). Furthermore, notwithstanding his knowledge that the trial judge had presided over his prior case, Horne did not file his recusal motion until approximately two months after

23

the case had been pending before the trial judge. Horne did not object when the trial judge subsequently presided over the motion to suppress hearing. Consequently, the motion was untimely, and Horne failed to show good cause for his failure to meet the time requirements. Since the motion did not comply with the requirements of USCR 25.1 and contained only the defendant's unverified speculation that the trial judge would be biased against him, the trial court did not err in denying the defendant's recusal motion on its face. See *Thomason v. State*, 281 Ga. 429, 435 (16) (637 SE2d 639) (2006); *Brice v. State*, 242 Ga. App. 163, 167 (7) (529 SE2d 178) (2000).

8. Lastly, Horne contends that his appellate counsel provided ineffective assistance at the motion for new trial hearing. Significantly, when Horne filed his pro se motion raising his claim, he was still being represented by his appellate counsel and his claim was not considered by the trial court.

> [A] convicted defendant is not authorized to assert a pro se claim of ineffective assistance while represented by counsel. The Sixth Amendment right does not afford the defendant the hybrid right to simultaneously represent himself and be represented by counsel. . . . A pro se motion filed by a convicted defendant while represented by counsel is unauthorized and without effect.

24

(Citations and punctuation omitted.) *Williams v. Moody*, 287 Ga. 665, 669 (2) (697 SE2d 199) (2010). Since Horne's challenge regarding the effectiveness of his appellate counsel was without effect and was not considered below, it cannot be addressed in this appeal. See *Brooks v. State*, 265 Ga. 548, 551 (7) (458 SE2d 349) (1995) (the defendant's pro se appeal concerning the effectiveness of appellate counsel was premature since the representation was still ongoing when the claim was raised and the trial court had not considered the claim). If Horne elects to pursue his claim, he must do so in the proper forum. Id.

*Judgment affirmed. Ray and Branch, JJ., concur*.