**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

April 30, 2013

# In the Court of Appeals of Georgia

A13A0544. MYERS v. THE STATE.

RAY, Judge.

Following a jury trial, Milton Myers was found guilty beyond a reasonable doubt of burglary. OCGA § 16-7-1. He appeals from his conviction and the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress evidence. For the following reasons, we affirm.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept the court's credibility assessments unless clearly erroneous. The trial court's application of law to undisputed facts, however, is subject to de novo review.

(Citation omitted.) *Horne v. State*, 318 Ga. App. 484, 488 (3) (733 SE2d 487) (2012). "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." (Citation and punctuation omitted.) *Souder v. State*, 301 Ga. App. 348, 349 (1) (687 SE2d 594) (2009).

So viewed, the evidence shows that, on March 3, 2010, Sergeant Kenneth Carson of the Calhoun Police Department was on patrol in the area of Highway 53 and Outlet Center Drive when he observed a gold vehicle with tinted windows exiting the rear parking area of the Days Inn motel. As Carson was passing by in his patrol car, the gold vehicle came halfway out of the motel exit and stopped in the middle of the roadway. Carson thought that the vehicle's actions were strange and suspicious, as if the driver was reacting to the sight of his patrol car. As Carson was on his way to assist another officer at the time, he could not stop and investigate.

Approximately six hours after his encounter with the suspicious vehicle, Carson received a dispatch to respond to a burglar alarm at the Coach store at the outlet center, which was in close proximity to the Days Inn motel. While en route, Carson used his radio to advise other officers to be on the lookout for the gold vehicle that he had observed earlier. Upon his arrival at the Coach store, Carson noticed that

2

the glass on the front door of the store had been shattered and broken out, and that many Coach purses had been taken from the shelves inside the store.

In response to Carson's radio advisement, Officers Carrie Smith and Josh Justice located a vehicle in the Days Inn parking lot matching the description given by Carson. The officers' suspicions were further aroused by the fact that the vehicle was parked crooked in a parking space and backed in against an embankment. The officers also noticed that the vehicle's interior dome light was on and that the door was slightly ajar. Upon approaching the vehicle, the officers were able to look through the windows into the illuminated interior, where they observed several Coach purses in plain view sticking out from underneath a blanket in the back seat. After running the vehicle's tag number and checking with the motel clerk, the officers were able to determine that the address on the vehicle's registration matched the address furnished by Myers when he registered as a guest at the Days Inn motel. After confirming that the purses in the vehicle matched the description of the purses stolen from the Coach store, the officers obtained a search warrant for the vehicle and Myers' motel room. Upon executing the search warrant, the officers found Myers and another individual inside the motel room, along with the key to the vehicle and pieces

of broken glass. Using the key obtained from Myers, the officers searched the vehicle and recovered the stolen Coach purses.

In his sole enumeration of error, Myers contends that the trial court erred in denying his motion to suppress, arguing that the "plain view" doctrine cannot be used to support the subsequent search warrant in this case because the officers were not lawfully in the Days Inn parking lot at the time they observed the purses inside the vehicle. We disagree.

> Under the 'plain view' doctrine, a law enforcement officer has a right to visually search the entirety of a car from his vantage point on a street or roadside. The viewing need not be motivated by any articulable suspicion. On the contrary, law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside).

(Citations and punctuation omitted.) *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986).

Here, when the officers looked into the vehicle, they were not on a street or a roadway. However, the officers were in the Days Inn parking lot, which was readily accessible and openly used by the public. Furthermore, the evidence shows that the parking lot had multiple entrances and exits, and that motorists frequently used the

4

parking lot as a "cut-through" when driving towards the outlet mall where the Coach store is located. Based on these facts, it is clear that the officers were not required to obtain a search warrant or permission before entering the Days Inn parking lot to look for the vehicle. See, e.g., *Harding v. State*, 283 Ga. App. 287, 288 (641 SE2d 285) (2007); *State v. Echols*, 204 Ga. App. 630, 630-631 (420 SE2d 64) (1992).

Myers' reliance on *State v. O'Bryant*, 219 Ga. App. 862 (467 SE2d 342) (1996), is misplaced. In *O'Bryant*, the police went to a *private residence* without a warrant to investigate possible drug activity. After the police knocked on the doors of the residence without any response, one of the police officers went around the side of the house, in an area not commonly traversed by visitors, and looked into the defendant's truck without any legitimate reason for doing so. Although the officer observed marijuana inside the truck, it would not have been plainly visible to others because of the vehicle's location and the fact that the officer had to peer through tinted windows in order to see the marijuana. The officers then left the residence to obtain a search warrant before seizing the marijuana. Under those circumstances, we held that the suppression of the incriminating evidence was proper because the officer's actions constituted an impermissible search that did not fall within the scope

5

of the "plain view" exception and that the subsequent warrant based on information obtained from the impermissible search was, therefore, defective. *Id*. at 863-864.

In the instant case, the officers were in a parking lot used by the public when they observed the vehicle. Furthermore, the officers had a legitimate reason for approaching the vehicle because it matched the description given by Carson, and the vehicle was parked is a suspicious manner with its interior dome light on. See *Harding*, supra at 288. Although the vehicle had tinted windows, the interior of the vehicle was illuminated, making the incriminating evidence in the vehicle plainly visible to anyone walking by in the parking lot. As the officers were in a place they were lawfully entitled to be when they observed the stolen purses in plain view inside Myers' vehicle, their observations could be used as a basis for the search warrant in this case. See *Benton v. State*, 240 Ga. App. 243, 244 (1) (522 SE2d 726) (1999).

For the above reasons, the trial court did not err in denying the motion to suppress.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*