**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 17, 2014**

# In the Court of Appeals of Georgia

A13A1838. MACKEY v. THE STATE.

PHIPPS, Chief Judge.

After a joint trial, Lee Mackey and Milton Myers were convicted of burglary.[1] Mackey appeals from his conviction, challenging the denial of his motion to suppress, and contending that the evidence was insufficient to support the verdict. We affirm.

1. Mackey contends that the trial court erred by denying his motion to suppress evidence obtained during a search of a motel room and vehicle. He asserts that police officers obtained a search warrant based on the "plain view" doctrine, when the officers had no lawful right to be in the motel parking lot where the vehicle was parked. As Mackey concedes in his brief, this court rejected this argument in the

---

[1] OCGA § 16-7-1.

appeal filed by his co-defendant, Myers.[2] Mackey's contention is without merit for the reasons set out in *Myers v. State*.[3]

2. Mackey contends that the evidence was insufficient to sustain his conviction. He concedes that "the Appellee's evidence was sufficient to convict either Milton Myers or the Appellant of the offense of burglary. However, . . . the Appellee's evidence simply was not sufficient to convict both of them." The evidence was sufficient to support Mackey's conviction.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict. The standard of *Jackson v. Virginia* is met if the evidence

---

[2] *Myers v. State*, 321 Ga. App. 676, 678-679 (742 SE2d 494) (2013).

[3] Id.

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged.[5]

Viewed in this light, the evidence showed that on March 4, 2010, at about 2:30 a.m., police officers were dispatched to respond to a burglary alarm call at a Coach Factory Outlet Store ("the store") located in an outlet mall; the store sold purses and leather goods.

Two officers arrived at the store within minutes after receiving the call. The officers observed that the glass on the front door of the store was broken, and that there was broken glass on the ground near the door. Inside the store, on the floor about ten to twelve feet away from the door, were two large rocks or boulders with wet dirt on them. There were empty display shelves, and purses on the floor, and some purses were missing.

Approximately six hours earlier, one of the two responding officers had been driving his patrol vehicle approximately a half mile from the outlet mall when he saw a gold-colored Nissan vehicle exiting a motel parking lot. As the officer's vehicle approached, the Nissan stopped abruptly - remaining partially in the parking lot and

---

[5] *Gordon v. State*, 294 Ga. App. 908-909 (1) (670 SE2d 533) (2008) (citations omitted).

partially on the roadway; the maneuver aroused the officer's suspicion because the vehicle had had sufficient time to enter the roadway. The officer did not investigate at that time, but when he was dispatched to respond to the burglary alarm call at the store hours later, he radioed for other officers to "be on the lookout" for the vehicle as possibly being connected to the alarm call.

After hearing the radio bulletin, other officers spotted in the motel parking lot a parked vehicle that matched the vehicle described in the bulletin. The vehicle was not parked within a parking space; the hood was warm (though the air outside was cold), as if the vehicle had been recently driven. The vehicle's tag number was not readily visible because the vehicle was backed into a dirt embankment; and a piece of cardboard placed inside the vehicle's interior covered the identification number (which number would typically be visible through the windshield). Once officers ascertained the tag number, they determined that the vehicle was registered to a person with a Miami, Florida address.

The area was illuminated by lights from an adjacent gas station, and the vehicle's interior light was on. Looking into the vehicle from the outside, officers saw a blanket covering some items in the back seat, and they saw Coach-brand purses protruding from underneath the blanket. One officer, who had previously shopped at

4

the store, observed that attached to the purses were store tags of the type used at the store. The officers secured the vehicle without entering it.

One of the officers asked the motel office clerk whether there were any registered guests from Miami, Florida. The clerk handed the officer a motel registration card bearing Myers's name and signature, and the same Miami address indicated in the tag search of the vehicle. The motel registration card indicated that Myers's room had two occupants. Myers had checked into the room on March 3, 2010.

The officer who had seen the Nissan earlier, arrived at the motel parking lot and recognized the secured vehicle as the one he had seen. He looked through the vehicle's window and saw a blanket and purses; the purses had price tags attached and were similar to the purses he had seen on the shelves and floor in the store. A manager of the store confirmed at the scene and at trial that the purses in the vehicle had been stolen from the store.

At the gas station next to the motel, officers noticed a landscaped area where some large rocks or boulders had been placed in a design in a section of dirt. The landscape boulders were located at the gas station's exit onto the roadway on which the officer had been traveling when he encountered the Nissan hours earlier. There

5

were two empty spaces in the landscape design where the ground was damp; according to one of the officers, "it looked like two rocks had been removed recently." There was testimony that the rocks or boulders found inside the store resembled the ones that had been part of the landscape design at the gas station. The rocks or boulders (as well as photos of those items, the landscaping, and the burglary scene, inter alia) were admitted into evidence at trial.

Officers obtained a search warrant for both the Nissan and Myers's motel room. In executing the search warrant, officers found inside the motel room Mackey and Myers, keys to the vehicle, pieces of broken glass on a dresser near the room's entrance, two pairs of gloves, and a bandana. Mackey told officers he was from Miami, Florida. Officers found inside the vehicle 61 Coach-brand purses (with price tags attached), gloves, pieces of glass that appeared to match the broken glass at the store, and another Florida license plate.[6]

Mackey and Myers were arrested and charged as parties to the crime of burglary. At trial, the court instructed the jury on the principle of "party to a crime." Although circumstantial, the evidence in this case was sufficient to authorize a rational trier of fact to conclude that all reasonable hypotheses were excluded save

---

[6] See *Myers*, supra.

that of Mackey's guilt,[7] and that Mackey was guilty as a party to the crime of burglary.[8]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[7] See *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012).

[8] See id. at 439-440 (2).