### A01A2317. EDGELL v. THE STATE.
(560 SE2d 532)

BLACKBURN, Chief Judge.

Following a bench trial, Ted J. Edgell appeals his conviction for misdemeanor possession of marijuana, contending that the trial court erred by denying his motion to suppress evidence of the contraband. For the reasons set forth below, we reverse.

On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. *State v. Winnie.*[1] Furthermore, the trial court's application of law to facts which are undisputed is subject to de novo review. Id.

Viewed in the light most favorable to the trial court's ruling, the

---

[1] *State v. Winnie*, 242 Ga. App. 228, 229 (529 SE2d 215) (2000).

evidence shows that, at approximately 12:50 p.m. on January 5, 2001, Officer Purkey stopped a car being driven by Mark Hill-Pope because it had an expired tag.[2] Edgell was riding as a passenger in Hill-Pope's car. Because of the expired tag, Officer Purkey immediately called for a wrecker to impound the car. Officer Purkey then approached the car and asked Hill-Pope for his driver's license and proof of insurance. After running the tag number through his computer, Officer Purkey determined that the tag did not match the vehicle being driven by Hill-Pope. Further checking, however, confirmed that the car being driven by Hill-Pope had not been stolen. Officer Purkey testified that, after checking the license and registration of the car, he did not suspect Edgell of any criminal activity.

Officer Purkey then approached Hill-Pope, asked him to step to the rear of the vehicle, and patted him down for weapons. Hill-Pope told Officer Purkey that there were no drugs or weapons in his car. At that time, Officer Purkey began to explain to Hill-Pope that his car was going to be impounded and that he needed to get it properly registered before he drove it again.

Officer Purkey next approached Edgell and asked him for his identification. He testified that Edgell was nervous and fidgety. Officer Purkey then asked Edgell if there were any weapons or drugs in the car, and Edgell responded that he did not know for sure because the car did not belong to him.

At that time, Officer Purkey left Edgell, returned to the rear of the car, and told Hill-Pope that, although he was going to issue him a ticket and impound his car, he would not arrest him. Edgell then attempted to leave the car and call someone for a ride, but Officer Purkey stopped him and instructed him to stay seated.

Officer Purkey then returned to the passenger side of the car and asked Edgell to exit the vehicle. According to Officer Purkey, Edgell was placing his hands in his pockets when he exited the car. As Edgell stood up, Officer Purkey immediately began a pat-down search. Officer Purkey stated that it was his habitual practice to automatically perform a pat-down "anytime anybody gets out of [a] vehicle." During this pat-down, Edgell protested, asking Officer Purkey to explain what he had done wrong.

As he executed the pat-down, Officer Purkey felt a hard object in Edgell's pocket. When Edgell refused to allow Officer Purkey to reach inside the pocket and remove the item, Officer Purkey then placed both Hill-Pope and Edgell in handcuffs, called for a supervisor, and waited for him to arrive. Once his supervisor arrived, Officer Purkey

---

[2] Edgell does not contend that the initial stop of Hill-Pope's car was improper, and, as such, we do not consider this issue.

approached Edgell and asked him if he had a crack pipe in his pocket. Officer Purkey then reached into Edgell's pocket and removed the crack pipe. Edgell admitted that he used the pipe to smoke marijuana on occasion. Officer Purkey then removed a small amount of marijuana from the pocket of Edgell's jeans. Officer Purkey placed Edgell into custody and released Hill-Pope.

Officer Purkey admitted that Edgell did nothing to make him concerned for his safety while he was talking to Hill-Pope and that he had no reason to believe that Edgell might be armed at that time. Officer Purkey further admitted that, other than his routine concern for his safety at any traffic stop, there was not anything in particular that Edgell had done which made him feel as if he were in danger.

Edgell now contends that, because Officer Purkey automatically patted him down without any suspicion that he was armed, the pat-down was improper and the pipe and marijuana should have concomitantly been suppressed. We agree.

As an initial matter, we point out that, when Edgell initially attempted to exit the car in order to phone someone to pick him up, Officer Purkey had no articulable suspicion that Edgell was engaged in any criminal activity and, as such, had no authority to detain Edgell at that time. See, e.g., *Holt v. State*.[3]

Moreover, even if the detention were justified, the pat-down was not under the facts of this case. "In *Terry v. Ohio*,[4] the [United States Supreme Court's] emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon." (Punctuation omitted.) *Clark v. State*.[5] "More invasive procedures have been approved where an officer has had a reasonable basis for concluding that a suspect was armed or was otherwise a threat to his personal safety." *State v. Newton*.[6] Implicit in this rule of law, however, is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances. *Hayes v. State*.[7]

> [E]ven a particularized and objective basis for suspecting that a person is engaged in criminal activity is not

---

[3] *Holt v. State*, 227 Ga. App. 46 (487 SE2d 629) (1997).

[4] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[5] *Clark v. State*, 208 Ga. App. 896, 900 (2) (432 SE2d 220) (1993).

[6] *State v. Newton*, 227 Ga. App. 394, 396 (1) (489 SE2d 147) (1997).

[7] *Hayes v. State*, 202 Ga. App. 204, 206 (414 SE2d 321) (1991).

sufficient to authorize a pat-down of the suspect for weapons. An officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons only if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others. A *Terry* pat-down is authorized when the officer reasonably believes that it is necessary to protect the officer from attack.

(Citation omitted.) *State v. Banks*.[8]

In this case, Officer Purkey testified that he had no fear that Edgell was either armed or engaged in criminal activity prior to the pat-down. And, although Officer Purkey testified that he performed the pat-down of Edgell for his safety, he further explained that it was his general practice to automatically pat down any person he asked to exit a car. Thus, it was this automatic response which Officer Purkey apparently employed in this case, which he justified as a standard safety measure.

An individual's rights under the Fourth Amendment are not automatically waived, however, simply because he or she is asked to step out of a vehicle. The safety of officers is of extreme importance to this Court. Nonetheless, our constitution requires an officer to provide evidence to show that an act alleged to be performed for his safety was actually performed for that purpose in conformance with the requisite standards of *Terry*. Without appropriate evidence that the "officer . . . had a reasonable basis for concluding that [the suspect subject to the search] was armed or was otherwise a threat to his personal safety," *Newton*, supra, the intrusive search of the type in this case is unconstitutional.

Because the evidence in this case does not show that Officer Purkey had a reasonable basis for concluding that Edgell was armed or dangerous prior to performing his automatic and habitual pat-down, the pat-down was constitutionally improper, and the trial court should have granted Edgell's motion to suppress.

*Judgment reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 15, 2002.

*Dovre C. Jensen, Jr.*, for appellant.
*Steven L. Harris, Solicitor-General*, for appellee.

---

[8] *State v. Banks*, 223 Ga. App. 838, 840 (479 SE2d 168) (1996).