A10A0478. MOLINA v. THE STATE.
(695 SE2d 656)

BARNES, Presiding Judge.

Anibal Pacheco Molina appeals his conviction for trafficking in cocaine. He contends the trial court erred when it denied his motion to suppress evidence obtained during a pat-down search. Because the

94

officer had no particularized suspicion that Molina had a weapon or posed a safety threat, but only patted him down pursuant to his general pattern of frisking every person who gets out of a car, we reverse.

On appeal from a motion to suppress, we construe the evidence in the light most favorable to the trial court's findings and judgment. *Perkins v. State*, 300 Ga. App. 464, 468 (685 SE2d 300) (2009). We review de novo the trial court's application of the law to undisputed facts. *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008).

In this case, the facts are not disputed. The evidence shows an officer stopped a pickup truck for a broken taillight. Molina was a passenger, and the driver consented to the officer's request to search his truck. A backup officer had been watching Molina while the driver interacted with the first officer, and asked Molina to step out of the truck before the search began. When asked if Molina had demonstrated or displayed any sign of being armed and dangerous at any time, the first officer replied, "Not necessarily armed and dangerous, no." The backup officer testified that Molina did not speak English well and just nodded and smiled at him every once in a while.[1]

The officer testified that he "did a *Terry* pat-down" of Molina's clothing "for weapons," and felt "a large brick-like substance or material or object in his front waistband," which was "a common place for weapons to be located." He was unsure if the lump was the handle of a gun or drugs, so he retrieved the object, which turned out to be almost a kilo of cocaine. The State asked if Molina did anything out of the ordinary as the officer began to pat him down, and the officer responded that, before he got out of the car Molina was breathing heavily and the carotid artery in his neck was pounding more that an average person. "Other than that," he concluded, Molina "was pretty normal."

On cross-examination, the officer admitted patting down Molina almost immediately after he got out of the car, explaining, "Every time we have a consent search and we get someone out of a vehicle, I always pat them down for weapons. While I'm going to be tucked inside somebody's car I want to know if while they're standing out there they're armed." He agreed that he would pat down any occupant of a vehicle he was about to search. When asked if he patted down the occupants regardless of whether he saw any sign the occupant might have a weapon, he replied, "Yes, sir. I was on a little bit of a heightened state of awareness with this individual, considering I could see him breathing heavy [sic] and I noticed that his

---

[1] An interpreter assisted Molina during the hearing and subsequent bench trial.

pulse rate appeared elevated." The State presented no other evidence that the officer feared for his safety because of anything particular to Molina.

Molina moved to suppress evidence of the cocaine found in his waistband, contending that absent an articulable suspicion that Molina had weapons or the officer might be in danger, the pat-down was unlawful. The trial court orally denied the motion to suppress at the hearing "based on the evidence that [it] heard and the law." The parties subsequently stipulated that the substance found on Molina weighed 983 grams and was 48.4 percent cocaine. After a bench trial, the trial court found Molina guilty of trafficking cocaine and sentenced him to the mandatory minimum of 25 years in confinement and a fine of $1 million.

Molina contends the trial court erred in denying his motion to suppress evidence of the drugs because the officer had no particularized suspicion Molina was armed or dangerous and thus had no cause to frisk him. The officer testified he frisked everyone who exited a vehicle which was about to be searched, but did not testify that he thought Molina had a gun or posed a danger. To be constitutionally permissible under the Fourth Amendment, an initial frisk must be "supported by a reasonable belief that [the defendant] was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons." *Ybarra v. Illinois*, 444 U. S. 85, 93 (100 SC 338, 62 LE2d 238) (1979).

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U. S. 40, 64 (88 SC 1889, 20 LE2d 917) (1968).

The State has the burden of proving that the pat-down was lawful, by showing that "a reasonably prudent man in the circumstances of the officer would be warranted in the belief that his safety or that of others was in danger." (Citations and punctuation omitted.) *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008).

The officer possesses

> a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual. . . . The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968). If the officer has a particularized basis for his suspicion the defendant might be armed or dangerous, he may frisk a suspect, and "then intrude beneath the surface only if he comes upon something which feels like a weapon." *Clark v. State*, 208 Ga. App. 896, 900 (2) (432 SE2d 220) (1993).

> Implicit in this rule of law . . . is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances.

(Citation omitted.) *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002).

The United States Supreme Court recently reiterated that "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous," and that this requirement applies to passengers in cars legally stopped. *Arizona v. Johnson*, ___ U. S. ___ (129 SC 781, 784, 172 LE2d 694) (2009). The court noted that the police may lawfully detain a vehicle and its occupants during an inquiry into a vehicular violation, and need not have additional cause to believe any of the occupants were involved in criminal activity. Id. To go beyond detention and "justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Id.[2]

To comply with the standards in *Terry*, "an officer [must]

---

[2] The issue in *Johnson* was whether the interaction of officer and passenger became consensual. The court held it did not become consensual and remanded the case for further consideration. Neither the Supreme Court nor the state appellate court determined whether

provide evidence to show that an act alleged to be performed for his safety was actually performed for that purpose. . . ." *Milby v. State*, 256 Ga. App. 429, 431 (569 SE2d 256) (2002). During the motion hearing in this case, neither the first officer who pulled the truck over nor the backup officer who searched Molina testified they thought Molina posed a threat of any kind. In fact, the officer described Molina as "pretty normal," other than his heavy breathing and pounding pulse. Testimony that a passenger was breathing hard with a pounding pulse, however, does not establish a reasonable suspicion that he poses a danger to the officer's safety. See *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) (nervousness alone insufficient to establish reasonable suspicion to detain and investigate for illicit drug activity). And in this case, the officer did not even testify that these signs made him fear for his safety or suspect Molina might be dangerous, only that they gave him "a little bit of a heightened state of awareness."

The State argues that the analysis differs somewhat in this case from similar cases in which we have held the State failed to present sufficient evidence to overcome a motion to suppress, such as *Milby v. State*, supra, 258 Ga. App. at 431, and *Edgell v. State*, supra, 253 Ga. App. at 775. In *Edgell*, the officer had already issued a traffic citation and was about to impound the vehicle, and the defendant was leaving. The officer frisked him when he stepped out of the car because he always frisked people who exited a vehicle. Id. at 776. We held that the officer had no reasonable basis to conclude Edgell was armed or dangerous or even to detain him. In this case, though, the driver here consented to a search and Molina was not leaving. He was detained for the duration of the stop and had to remain nearby while the officers searched the car, during which time they would be "even more exposed to potential harm than they normally would have been during a routine traffic stop," the State argues. It surmises that the inherent danger to an officer searching a vehicle with a passenger standing by constitutes sufficient justification for patting down the passenger first, because the "weight of officer safety against an individual's rights is even greater under these circumstances."

The problem with the State's argument is that our law requires that the officer reasonably suspect that Molina himself posed a threat to the officer's safety. It is not sufficient to say the situation itself poses a danger to the officer and therefore he is justified in frisking a vehicle's occupant. As many courts have observed, traffic stops are inherently risky. *Arizona v. Johnson*, supra, 129 SC at 787,

---

the officer reasonably suspected the defendant might be armed and dangerous.

but a pat-down must still be based on information specific to the person frisked and not to some general policy. The State here presented no evidence specific to Molina that gave the officer any reason to suspect that he posed a physical hazard. The officer testified, simply and truthfully, that he routinely patted down passengers "for officer safety" when a driver consents to a search of his vehicle. This testimony is insufficient to establish that the officer harbored a reasonable suspicion that Molina was armed and dangerous or otherwise posed a threat to officer safety. *Teal v. State*, supra, 291 Ga. App. at 488; *Milby v. State*, supra, 256 Ga. App. at 430; *Edgell v. State*, supra, 253 Ga. App. at 778.

Because the State failed to present evidence that the officer had a reasonable, articulable, particularized basis for believing Molina might threaten his safety, it has not met its burden of establishing that the pat-down was lawful. Accordingly, we must reverse the trial court's denial of Molina's motion to suppress.

*Judgment reversed. Blackburn and Bernes, JJ., concur.*

DECIDED MAY 14, 2010.

*John H. Petrey*, for appellant.

*Daniel J. Porter, District Attorney, Jon W. Setzer, Assistant District Attorney*, for appellee.