**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 12, 2014**

# In the Court of Appeals of Georgia

A14A1040. CHARALES v. THE STATE.                    DO-038

DOYLE, Presiding Judge.

Following a bench trial, Robert Charales a/k/a Robert Chakales was found guilty of driving under the influence to the extent it was less safe to drive ("DUI less safe")[1] and driving under the influence with an unlawful alcohol concentration ("DUI per se").[2] Charales appeals the denial of his subsequent motion for new trial, arguing that the trial court erred by denying his pretrial motion to suppress because (1) the checkpoint at which he was stopped was unlawful, and (2) police failed to timely read him the implied consent notice. Because the State failed to demonstrate that the law

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (5).

enforcement agency's checkpoint program had an appropriate primary purpose, we reverse.

When reviewing a trial court's ruling on a motion to suppress, the appellate court follows three fundamental principles.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[3]

So viewed, the evidence shows that on March 14, 2009, Charales was arrested and charged with DUI less safe and DUI per se following his inability to properly perform field sobriety tests at a checkpoint implemented by the Atlanta Police

---

[3] (Citation and punctuation omitted.) *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013), quoting *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010).

2

Department ("APD").[4] With Charales's consent, police administered two Intoxilyzer 5000 tests, which indicated blood alcohol levels of .206 and .215. Charales was charged with DUI per se and DUI less safe. Prior to trial, he filed a motion to suppress, arguing that the checkpoint was unlawful and the police failed to timely read him the implied consent notice, and the trial court denied the motion after an evidentiary hearing.[5] Following a stipulated bench trial, the trial court found Charales guilty on both counts, and it merged the less safe count into the per se count. The trial court denied Charales's subsequent motion for new trial, and this appeal followed.[6]

1. Charales argues that the trial court erred by denying his motion to suppress because the State failed to prove that APD's checkpoint was lawful. We agree.

---

[4] The officer administered the field sobriety tests after noticing that Charales was unable to place his vehicle in park, had slurred speech and bloodshot eyes, and emanated a strong odor of alcohol; Charales denied that he had been drinking.

[5] Although the order denying the motion to suppress states that the motion was based on Charales's arguments regarding the implied consent notice, the parties also presented evidence and argument regarding the legality of the checkpoint, and the trial court orally ruled at the suppression hearing that the checkpoint was proper.

[6] We note that a new superior court judge heard and ruled upon the motion for new trial after the judge who presided over the motion to suppress hearing and the bench trial retired.

3

"[W]here a defendant challenges his initial stop at a police checkpoint by way of a motion to suppress, the State bears the burden of proving that the seizure was constitutional."[7] In *Brown v. State*,[8] the Supreme Court of Georgia reaffirmed the five requirements that the State must show for a checkpoint to be upheld as constitutional as required by the United States Supreme Court in *LaFontaine v. State*[9]:

> (1) the decision to implement the [checkpoint] was made by supervisory personnel rather than the officers in the field; (2) all vehicles were stopped as opposed to random vehicle stops; (3) the delay to motorists was minimal; (4) the [checkpoint] operation was well identified as a police checkpoint; and (5) the "screening" officer's training and experience was sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[10]

In addition, in *City of Indianapolis v. Edmond*,[11] the United States Supreme Court "supplemented *LaFontaine's* test for evaluating the implementation and operation of

---

[7] *Brown*, 293 Ga. at 799 (2) (f).

[8] Id.

[9] 269 Ga. 251 (497 SE2d 367) (1998).

[10] (Punctuation omitted.) *Brown*, 293 Ga. at 793 (2) (b), quoting *LaFontaine*, 269 Ga. at 253 (3).

[11] 531 U. S. 32 (121 SCt 447, 148 LE2d 333) (2000).

the particular checkpoint with a distinct requirement focused on the law enforcement agency's checkpoint program."[12]

> At a minimum, the State must show that the law enforcement agency's checkpoint program had an appropriate primary purpose other than ordinary crime control – *a purpose examined at that programmatic level*, rather than by trying to determine the motives of the supervisor who implemented and the officers who conducted the particular checkpoint at issue.[13]

In this case, pretermitting whether the checkpoint established by the APD met the five *LaFontaine* requirements, the State has failed to prove that the checkpoint *program* had an appropriate primary purpose.

Sergeant Zachery Wilson testified at the suppression hearing that he, acting as a field supervisor, called for the checkpoint that evening where Charales was stopped and arrested. According to Sergeant Wilson, the purpose of that particular checkpoint was not crime suppression, but rather to "check for driver's license[s], seat belts[, headlights,] and safety violations." There was, however, no testimony nor any written

---

[12] *Williams v. State*, 293 Ga. 883, 891 (3) (b) (750 SE2d 355) (2013), citing *Brown*, 293 Ga. at 798-799 (2) (e).

[13] (Punctuation omitted; emphasis supplied.) *Brown*, 293 Ga. at 799 (2) (f), quoting *Edmond*, 531 U. S. at 48 (III).

evidence admitted regarding the APD's checkpoint policy or program as a whole. As the Supreme Court of Georgia recently explained,

> a finding that a *particular* checkpoint has a primary purpose other than ordinary crime control is not enough to satisfy the *Edmond* requirement. *Edmond* requires an examination of the policy purpose of the checkpoints, viewed at the programmatic level, to ensure that an agency's checkpoints are established primarily for a lawful and focused purpose like traffic safety rather than to detect evidence of ordinary criminal wrongdoing."[14]

Because the State failed to show that the APD's "'checkpoint program had an appropriate primary purpose other than ordinary crime control' when viewed at the programmatic level[,] . . . we therefore must conclude that the checkpoint at which [Charales] was stopped violated the Fourth Amendment."[15] Thus, the trial court erred by denying Charales's motion to suppress.

2. Based on our holding in Division 1, we need not address Charales's second enumeration.

*Judgment reversed. Miller and Dillard, JJ., concur.*

---

[14] (Punctuation omitted; emphasis in original.) *Williams*, 293 Ga. at 891 (3) (b).

[15] Id. at 893 (3) (b), quoting *Brown*, 293 Ga. at 799 at (2) (e).