**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 15, 2015**

# In the Court of Appeals of Georgia

A15A0093. ARMENTROUT v. THE STATE.

DILLARD, Judge.

Renee Armentrout was stopped at a police checkpoint and arrested for driving under the influence of alcohol. Following a stipulated bench trial, she was convicted of driving under the influence of alcohol to the extent it was less safe for her to do so (DUI less safe) and driving under the influence of alcohol with an excessive blood-alcohol concentration (DUI per se). On appeal, Armentrout contends that the trial court erred in denying her motions to suppress evidence recovered from the traffic stop and the results of the State-administered chemical test, arguing that the checkpoint was unlawful and the police officer's reading of the implied-consent warning was misleading. For the reasons set forth *infra*, we agree that the checkpoint was unlawful and, thus, reverse Armentrout's convictions.

Viewed in the light most favorable to the trial court's findings and judgment,[1] the evidence shows that on June 29, 2011, Sergeant Ronnie Young—an officer in the Johns Creek Police Department (who supervised day-to-day traffic-enforcement operations)—submitted a written proposal to his superior officer to establish a traffic task force, which would conduct several traffic-safety checkpoints during the upcoming Fourth of July weekend. In addition to specifying the times and locations for the checkpoints, the proposal noted that the goal of the task force was to "establish safety checkpoints to enhance safe travel" through the city and that the "primary purpose of the checkpoints [was] to conduct a check of driver's licenses, and to identify drivers who are under the influence of drugs and/or alcohol." Young's superior approved the proposal, and Johns Creek police officers (including Sergeant Young) began implementing the checkpoints two days later.

At approximately 6:30 p.m. on July 4, 2011, Armentrout stopped at the traffic checkpoint that officers had established at the intersection of Bell Road and Cauley Creek Drive. Upon approaching Armentrout's vehicle and requesting her driver's license, Sergeant Young smelled alcohol and noticed that Armentrout's eyes were watery. Additionally, Armentrout spoke with a slight slur and admitted that she had

[1] *See Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

2

been drinking "a little bit." Then, after administering an alco-sensor breath test (which returned a positive result), Sergeant Young asked another officer to have Armentrout perform field-sobriety tests. The second officer did so, and the tests indicated that Armentrout was indeed impaired. Consequently, the officer arrested Armentrout, read her the implied-consent notice,[2] and asked if she would consent to a blood-alcohol test. When Armentrout initially asked what would happen if she refused, the officer read the relevant part of the implied-consent notice to her again. Armentrout then consented to testing, which showed that her blood-alcohol concentration exceeded the legal limit.

The State charged Armentrout, via accusation, with one count of driving under the influence of alcohol to the extent that it was less safe for her to do so (DUI less safe)[3] and one count of driving under the influence of alcohol with an excessive blood-alcohol concentration (DUI per se).[4] Shortly thereafter, Armentrout filed a motion to suppress the evidence garnered as a result of the traffic stop, arguing that the checkpoint was unlawful, as well as a separate motion in limine to exclude the

---

[2] *See* OCGA § 40-5-67.1 (b) (2).

[3] *See* OCGA § 40-6-391 (a) (1).

[4] *See* OCGA § 40-6-391 (a) (5).

3

blood-alcohol test results, arguing that the officer's re-reading of the implied-consent notice was misleading. But after holding a combined evidentiary hearing on these issues, the trial court denied both of her motions. Subsequently, Armentrout agreed to a stipulated bench trial, which concluded with the trial court finding her guilty on both the DUI per se and DUI less safe charges. This appeal follows.

At the outset, we note that when the facts material to a motion to suppress are disputed, "it is generally for the trial judge to resolve those disputes and determine the material facts."[5] This principle is well established, and our Supreme Court has "identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts."[6] An appellate court generally must (1) accept a trial court's findings unless they are clearly erroneous,[7] (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of

---

[5] *Hughes v. State*, ___ Ga. ___ Slip op. at 5 (1) (Case No. S14G0622; decided March 16, 2015); *see also Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[6] *Hughes*, Slip op. at 5 (1).

[7] *See id*. at 5-6 (1); *State v. Hargis*, 294 Ga. 818, 823 n. 12 (2) (756 SE2d 529) (2014); *Hammont*, 309 Ga. App. at 396.

4

the trial court,[8] and (3) limit its consideration of the disputed facts to those expressly found by the trial court.[9] But we review *de novo* the trial court's "application of law to the undisputed facts."[10] With these guiding principles in mind, we turn now to Armentrout's claims of error.

1. Armentrout contends that the trial court erred in denying her motion to suppress, arguing that the checkpoint was unlawful because the State failed to prove that the Johns Creek Police Department's overall checkpoint program had a legitimate primary purpose. We agree.

The Supreme Court of the United States has interpreted the Fourth and Fifth Amendments[11] to permit police roadblocks or checkpoints, holding that although the stops need not be based on probable cause, they must still be conducted in a manner

---

[8] *See Hughes*, Slip op. at 6 (1); *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013); *Hammont*, 309 Ga. App. at 396.

[9] *See Hughes*, Slip op. at 6 (1); *Miller v. State*, 288 Ga. 286, 287 (1) (702 SE2d 888) (2010).

[10] *State v. Conner*, 322 Ga. App. 636, 637 (745 SE2d 837) (2013); *see also Young v. State*, 310 Ga. App. 270, 271 (712 SE2d 652) (2011).

[11] *See* U.S. Const. amend. IV & V.

making them reasonable under the Fourth Amendment.[12] And when a defendant challenges his initial stop at a police checkpoint by way of a motion to suppress, the State "bears the burden of proving that the seizure was constitutional."[13]

The requirements for determining the constitutionality and lawfulness of a police checkpoint under Georgia law were set forth initially in *LaFontaine v. State*,[14] which held that

> [a] roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the screening officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[15]

---

[12] *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (110 SCt. 2481, 110 LE2d 412) (1990).

[13] *Williams v. State*, 293 Ga. 883, 886 (2) (750 SE2d 355) (2013) (punctuation omitted); *accord Brown v. State*, 293 Ga. 787, 799 (750 SE2d 148) (2013); *see also* OCGA § 17-5-30 (b).

[14] 269 Ga. 251 (497 SE2d 367) (1998).

[15] *Id.* at 253 (3).

Importantly, these factors are not general guidelines, but are instead "minimum constitutional prerequisites."[16]

Two years after the Supreme Court of Georgia issued its opinion in *LaFontaine*, the Supreme Court of the United States, in *City of Indianapolis v. Edmond*,[17] supplemented *LaFontaine's* test for evaluating the implementation and operation of the particular checkpoint with "a distinct requirement focused on the law enforcement agency's checkpoint program."[18] Analyzing that decision, our Supreme Court recently noted that "*LaFontaine's* requirement that the decision to implement a particular roadblock be made by 'supervisory personnel' is distinct from *Edmond's* requirement that the roadblock program have a primary purpose other than the general interest in crime control."[19] Thus, at a minimum, the State must show that

---

[16] *State v. Conner*, 322 Ga. App. 636, 638 (745 SE2d 837) (2013) (punctuation omitted).

[17] 531 U.S. 32 (121 SCt. 447, 148 LE2d 333) (2000).

[18] *Williams*, 293 Ga. at 891 (3) (b); *accord Brown v. State*, 293 Ga. at 798-99 (2) (e); *see also Edmond*, 531 U.S. at 48 (III) (holding that to comply with the Fourth Amendment, a checkpoint program must have, in addition to safeguards on the implementation and operation of the checkpoints, a primary purpose other than "the general interest in crime control").

[19] *Williams*, 293 Ga. at 888 (3); *accord Brown*, 293 Ga. at 796.

the law enforcement agency's checkpoint program had an appropriate primary purpose other than ordinary crime control—*a purpose examined at that programmatic level*, rather than by trying to determine the motives of the supervisor who implemented and the officers who conducted the particular checkpoint at issue.[20]

Here, Sergeant Young testified that although he would submit checkpoint proposals, including the checkpoint at issue, to a superior officer, he generally had supervisory responsibilities with regard to implementing checkpoints. He further testified that the proposal for this particular task force and series of checkpoints was submitted and approved several days before implementation. Sergeant Young also stated that the checkpoint stopped all vehicles, was well-identified, was conducted by well-trained officers, and only minimally delayed motorists. In addition, as noted *supra*, the State introduced the proposal submitted by Sergeant Young, which stated that the goal of the July 4th Task Force was "to establish safety checkpoints to enhance safe travel" through the city and that the "primary purpose of the checkpoints [was] to conduct a check of driver's licenses, and to identify drivers who are under

---

[20] *Brown*, 293 Ga. at 799 (2) (f) (emphasis supplied); *see Edmond*, 531 U.S. at 48 (III).

8

the influence of drugs and/or alcohol." And during the hearing, Sergeant Young reiterated that this was indeed the checkpoint's primary purpose.

Nevertheless, although the checkpoint implemented by Sergeant Young and the other Johns Creek police officers may have met the requirements mandated by *LaFontaine*, the State failed to prove that the checkpoint *program* had an appropriate primary purpose. As noted *supra*, the State presented evidence that *this* checkpoint had a lawful purpose. However, a finding that a *particular* checkpoint has a primary purpose other than ordinary crime control is "not enough to satisfy the *Edmond* requirement."[21] Indeed, *Edmond* requires "an examination of the policy purpose of the checkpoints, viewed at the *programmatic level*, to ensure that an agency's checkpoints are established primarily for a lawful and focused purpose like traffic safety rather than to detect evidence of ordinary criminal wrongdoing."[22] And here, there was no testimony nor any written evidence admitted regarding the Johns Creek Police Department's checkpoint policy or program as a whole. We are, therefore, constrained to conclude that the checkpoint at which Armentrout was stopped

---

[21] *Williams*, 293 Ga. at 891 (3) (b); *see also Brown*, 293 Ga. at 796 (2) (d).

[22] *Williams*, 293 Ga. at 891 (3) (b) (emphasis supplied); *see also Brown*, 293 Ga. at 796 (2) (d).

violated the Fourth Amendment.[23] Accordingly, the trial court erred by denying Armentrout's motion to suppress.

2. Given our holding in Division 1, we need not address Armentrout's remaining claims of error.

*Judgment reversed. Ellington, P. J., and McFadden, J., concur.*

---

[23] *See Williams*, 293 Ga. at 892-93 (3) (b) (reversing trial court's denial of defendant's motion to suppress because State failed to make necessary showing that county sheriff's office's checkpoint program was properly limited to a lawful and focused purpose like traffic safety, and, therefore, challenged roadblock was unconstitutional); *Charales v. State*, 329 Ga. App. 533, 536 (1) (765 SE2d 701) (2014) (reversing trial court's denial of defendant's motion to suppress because, even though specific checkpoint at issue may have been implemented for a proper purpose, the State failed to present any evidence that Atlanta Police Department's checkpoint program as a whole had an appropriate primary purpose).