**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 14, 2018**

# In the Court of Appeals of Georgia

A18A0613. THE STATE v. DYKES.

DILLARD, Chief Judge.

The State appeals the trial court's grant of Terrence Dykes's motion to suppress evidence obtained during a traffic stop, which resulted in him being arrested and charged with being a habitual violator, driving under the influence of alcohol less safe, failure to maintain lane, and giving false information to a law-enforcement officer. Specifically, the State argues the trial court's factual findings were erroneous and that it erred in dismissing the case *sua sponte* without first inquiring whether the State could produce any evidence other than that suppressed by the court. For the reasons set forth *infra*, we affirm.

Viewed in light most favorable to the trial court's ruling,[1] the record reflects that on August 21, 2016, at approximately 12:50 a.m., a patrol officer with the City of Johns Creek Police Department observed a vehicle, which was traveling south in the left lane of a road, cross the white dotted line on its right and then return to the left lane. Based on this traffic violation (*i.e.*, failure to maintain lane), the officer initiated a traffic stop of the vehicle and identified Dykes as the driver, even though he initially provided a false date of birth to the officer. Upon encountering Dykes, the officer detected the odor of alcohol and noticed that his eyes were bloodshot and watery. The officer then decided to conduct a DUI investigation to determine whether Dykes was impaired. Dykes admitted to drinking alcohol before driving and showed multiple signs of impairment during the field-sobriety tests. The officer also determined that Dykes's driving privileges had been revoked because he was a habitual violator.

Based on the foregoing observations, the officer arrested Dykes for various offenses, including failure to maintain lane and DUI less safe. Subsequently, Dykes was charged, via accusation, with being a habitual violator, DUI less safe, failure to maintain lane, and giving false information to a law-enforcement officer. Dykes then

---

[1] *See, e.g.*, *State v. Mohammed*, 304 Ga. App. 230, 230 (695 SE2d 721) (2010).

filed a motion to suppress the evidence obtained during the traffic stop, including his identity and the results of the sobriety tests, arguing that the stop was unlawful. The trial court held a hearing on the motion, and at its conclusion, the court orally granted the motion and stated its intention to issue a written order to that effect at a later date. Thereafter, on April 25, 2017, the trial court issued an order *sua sponte* dismissing the case because the motion to suppress had been granted. Several days later, on May 1, 2017, the trial court issued its final written order, granting Dykes's motion to suppress. This appeal by the State follows.

1. The State first argues that the trial court erred in granting Dykes's motion to suppress because its finding that he did not commit the traffic violation of failure to maintain lane was clearly erroneous. We disagree.

In reviewing the denial of a motion to suppress, we generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[2] That said, we review *de novo* the trial court's application of law to

_____

[2] *Armentrout v. State*, 332 Ga. App. 370, 371-72 (772 SE2d 817) (2015) (footnotes omitted).

3

the undisputed facts."[3] With these guiding principles in mind, we will now consider the State's argument.

During the hearing on the motion to suppress, the arresting officer repeatedly testified that the *sole* reason he initiated the traffic stop was because he observed Dykes's vehicle cross over the center white line into the right lane of the road and then back into the left lane in violation of OCGA § 40-6-48 (*i.e.*, failure to maintain lane).[4] This alleged traffic violation was recorded by a camera on the patrol car's dashboard (the "dash-cam video"), and it was played for the trial court during the hearing.[5] Dykes argued that the video did not show him crossing the center line, and the trial court agreed, noting that it could not see the car crossing over the line in the video.

---

[3] *Id.* at 372 (punctuation omitted).

[4] *See* OCGA § 40-6-48 (1) (Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety . . . .").

[5] It is unclear how much of the almost hour-long video the trial court viewed, but the State indicated that they planned to show only the traffic violation, which the officer indicated was "somewhere around the 50-minute mark[.]" And at the conclusion of the hearing, the court requested to view the portion of the dash-cam video a second time.

On appeal, the State contends that the trial court's finding in this regard was erroneous because the dash-cam video, along with the officer's testimony, conclusively establishes that Dykes's tires touched the white dashed line and then returned to his lane of travel. As to the officer's testimony, the State contends that his credibility was "never called into question" and that he was an experienced and well-trained traffic officer. But this argument ignores that a trial court on a motion to suppress is "not required to accept the testimony of *any* witness, even if that testimony is uncontradicted."[6] And here, based on its own independent review of the dash-cam video, the trial court apparently did not believe the officer's testimony that Dykes violated OCGA § 40-6-48.

Furthermore, we disagree with the State that the dash-cam video conclusively establishes that the trial court's finding that Dykes's car did not cross over the center lane of the road was clearly erroneous. Indeed, the video is dark and of poor quality and it is simply impossible for this Court to discern whether Dykes committed the traffic violation at issue. In fact, during the suppression hearing, the arresting officer

---

[6] *State v. Sanders*, 274 Ga. App. 393, 397 (617 SE2d 633) (2005) (emphasis supplied); *see Miller v. State*, 288 Ga. 286, 289 (2) (702 SE2d 888) (2010) ("[T]he trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (punctuation omitted)).

even apologized to the court for "the lack of quality on the video." When, as here, the dash-cam video is inconclusive, "we must review this evidence in the light most favorable to the trial court's findings and judgment."[7] Thus, we defer to the trial court's finding that Dykes did not commit the traffic violation that was the sole basis for the traffic stop.[8] And for a traffic stop to be valid, "an officer must identify

[7] *Phillips v. State*, 338 Ga. App. 231, 233 (789 SE2d 421) (2016); *see Dougherty v. State*, 341 Ga. App. 120, 123 n.1 (799 SE2d 257) (2017) ("We conduct a de novo review of factual findings when the controlling facts are clearly and completely discernible from a video recording. But [when] . . . some of the controlling facts are not fully captured in the recording, we defer to the trial court's findings regarding those facts." (citation omitted)); *Phillips*, 338 Ga. App. at 233 ("[O]ur own review of the video shows that it is dark and confirms that the video does *not* conclusively prove or disprove either the officer's or [the defendant's] testimony"). *Cf. Crider v. State*, 336 Ga. App. 83, 84 (783 SE2d 682) (2016) ("[A] reviewing court may also consider facts *indisputably discernable* from a videotape . . . ." (emphasis supplied)).

[8] In a separate, but related, claim of error, the State argues that the defendant need not commit a traffic violation to provide reasonable suspicion necessary to justify a traffic stop and that, in this case, there is "uncontroverted evidence of [Dykes's] vehicle weaving within its lane." But the State never argued to the trial court that the officer stopped Dykes because he was weaving *within* his lane, and this Court does not address arguments made for the first time on appeal. *See Fides v. State*, 237 Ga. App. 607, 607 (1) (516 SE2d 101) (1999) ("This Court is a court for the correction of legal errors and has no jurisdiction to address issues that are raised for the first time on appeal." (punctuation omitted)). To the contrary, the officer repeatedly testified that Dykes's failure to maintain lane was the only reason he initiated the traffic stop, and at the conclusion of the hearing, the State expressly argued, "We don't have somebody weaving within the lane[,] but going outside of it." Thus, we will not address the State's second claim of error.

specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity."[9] Thus, because the trial court's conclusion that Dykes did not commit a traffic violation was not clearly erroneous, the officer lacked reasonable suspicion to stop Dykes, and the court properly granted his motion to suppress.[10]

2. Next, without citing any legal authority to support its contention, the State makes a cursory argument that the trial court erroneously dismissed the case *sua sponte* without calling the case to trial or inquiring whether the State had any additional evidence. But the State fails to identify any admissible evidence that it would have presented if given the opportunity to do so. Moreover, our independent review of the record likewise fails to show

---

[9] *Jones v. State*, 291 Ga. 35, 38 (2) (727 SE2d 456) (2012); *accord Toole v. State*, 340 Ga. App. 633, 634 (798 SE2d 288) (2017).

[10] *See Jones*, 291 Ga. at 38 (2) (holding that an officer lacked reasonable suspicion to initiate a traffic stop when there was no evidence that the defendant violated a traffic law or drove in an unsafe manner); *State v. Mincher*, 313 Ga. App. 875, 877-78 (723 SE2d 300) (2012) (affirming the trial court's grant of a motion to suppress evidence obtained as a result of a traffic stop because the conduct that was alleged as the basis for the stop was not illegal and there was no objective basis to suspect that the defendant was or was about to be engaged in any criminal activity); *Thomas v. State*, 300 Ga. App. 120, 123-24 (684 SE2d 290) (2009) (holding that the officer lacked reasonable articulable suspicion to stop and detain the defendant when he had not committed any traffic violations and did nothing more than drive slowly through a neighborhood, intermittently stopping to look into the woods).

any evidence that the State could have presented to prove the charges against Dykes. Indeed, all of the evidence relevant to Dykes's charged offenses was obtained solely as the result of the traffic stop. Given our holding in Division 1 *supra*, that the traffic stop was illegal and the trial court properly granted Dykes's suppression motion, the State could not have produced any admissible evidence sufficient to prove the charged offenses.[11]

For all these reasons, we affirm the trial court's grant of Dykes's motion to suppress evidence.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[11]*See Lawson v. State*, 299 Ga. App. 865, 868 (1) (684 SE2d 1) (2009) ("The 'fruit of the poisonous tree' doctrine provides that any evidence acquired by the police through exploitation of information obtained by means of unlawful conduct is inadmissible in a criminal prosecution.").