**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A1802. THE STATE v. ROBUSTO.

DILLARD, Chief Judge.

The State appeals the trial court's grant of Nicholas Robusto's motion to suppress evidence obtained during a traffic stop and subsequent pat-down search, which resulted in him being arrested and charged with possession of heroin and failure to wear a seat belt. Specifically, the State contends that the trial court erred in ruling that the arresting officer's pat-down search was not justified by a reasonable belief that Robusto was dangerous. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the trial court's ruling,[1] the record shows that some time after 9:00 p.m. on February 2, 2016, an officer with the Atlanta Police Department on routine patrol, pulled his vehicle into the parking lot of a gas station,

---

[1] *See, e.g.*, *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

where he observed a white Nissan Sentra (with both a driver and a passenger) oddly parked in the middle of the lot rather than in a designated space or next to one of the gas pumps. As he slowly drove his patrol vehicle past the Sentra, with the intention of checking the vehicle's license tag, the officer noticed that the passenger was not wearing his seat belt. But before the officer could get a visual on the tag, the vehicle started accelerating, exiting the parking lot and entering a four-lane road. The officer followed and, given that the passenger was not wearing his seat belt, illuminated his vehicle's blue lights to initiate a traffic stop. The driver of the Sentra complied, pulling into the parking lot of a shopping center directly across the street.

After exiting his patrol vehicle and approaching the Sentra, the officer asked both occupants for identification. The driver produced a license, but the passenger informed the officer that he was not currently carrying any identification. Nevertheless, the passenger—who up to that moment had been sitting very still and looking straight ahead—identified himself as Nicholas Robusto and provided the officer with a date of birth, which the officer verified via a search of the Atlanta Criminal Information Center ("ACIC") database. During this inquiry, the officer noticed a small spoon with white residue on it in the vehicle's center console, which the driver attempted to conceal by sliding it toward the emergency brake, as well as

a newly opened box of Q-tip cotton swabs, both of which led the officer to suspect that the vehicle's occupants were engaging in illegal intravenous drug use. Consequently, the officer directed the driver to exit the vehicle and then asked him if it contained any illegal drugs. The driver denied being in possession of any drugs, but claimed that Robusto did, in fact, have drugs on his person.

Determining that this was no longer a routine traffic stop but, rather, had now evolved into an investigation for illegal drugs, the officer radioed for another unit to come to the scene. But without waiting for this assistance, the officer directed Robusto to exit the vehicle, and, once he had, asked him if he was in possession of any illegal drugs. Robusto responded negatively, but despite this denial, the officer initiated a pat-down search, which he characterized as being performed for safety purposes and as standard operating procedure for the APD. During this pat-down search, the officer felt what he believed to be syringes in the pockets of Robusto's pants. At this point, the officer shined his flashlight into Robusto's pockets and confirmed that he was in possession of two loaded syringes, which the officer then seized. Immediately thereafter, the officer arrested Robusto and, in a subsequent search, recovered a small bag of heroin, which Robusto had hidden in his shoe.

The State charged Robusto, via accusation, with one count of possession of heroin and one count of failure to wear a seat safety belt. Shortly thereafter, Robusto filed a motion to suppress the evidence seized as a result of the traffic stop and search. The trial court held a hearing on Robusto's motion, during which only the arresting officer testified. At the conclusion of the hearing, the trial court orally denied Robusto's motion, and it issued an order affirming that denial a few weeks later. But the trial court also issued a certificate of immediate review, and, subsequently, Robusto filed an application for interlocutory review with this Court. We initially granted Robusto's application and docketed the appeal, but later dismissed that order as improvidently granted.

Upon remittitur of the case to the trial court, Robusto filed a motion for reconsideration of the trial court's denial of his motion to suppress. The court granted Robusto's motion, now agreeing that the arresting officer's pat-down search was not supported by a reasonable belief that Robusto was armed or dangerous and, thus, the search was unlawful. And one week later, the trial court dismissed the case for want

4

of prosecution, finding that the State was unable to proceed given the court's grant of Robusto's motion to suppress. This appeal by the State follows.[2]

When the facts material to a motion to suppress are disputed, "it is generally for the trial judge to resolve those disputes and determine the material facts."[3] This principle is well established, and our Supreme Court has "identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts."[4] First, we generally must accept a trial court's findings "unless they are clearly erroneous."[5] Second, we must construe the evidentiary record in "the light most

_____

[2] Under OCGA § 5-7-1 (a) (4), the State may appeal directly "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy. . . ." *See State v. Fiorenzo*, 325 Ga. App. 666, 667 (1) (754 SE2d 634) (2014) (noting that a trial court's dismissal of criminal charges for want of prosecution following only a pretrial hearing did not place the defendant in jeopardy).

[3] *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015); *see also Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[4] *Hughes*, 296 Ga. at 746 (1).

[5] *Id.*; *accord Armentrout v. State*, 332 Ga. App. 370, 371-72 (772 SE2d 817) (2015).

favorable to the factual findings and judgment of the trial court."[6] And third, we generally must limit our consideration of the disputed facts to "those expressly found by the trial court."[7] Nevertheless, we review *de novo* the trial court's "application of law to the undisputed facts."[8] With these guiding principles in mind, we turn now to the State's claim of error.

The State contends that the trial court erred in granting Robusto's motion to suppress on the ground that the arresting officer's pat-down search was not supported by a reasonable belief that Robusto was armed or dangerous. We disagree.

The Supreme Court of the United States has set forth—most notably in the seminal case of *Terry v. Ohio*[9]—three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported

---

[6] *Hughes*, 296 Ga. at 746 (1); *accord Armentrout*, 332 Ga. App. at 372.

[7] *Hughes*, 296 Ga. at 746 (1); *accord Armentrout*, 332 Ga. App. at 372.

[8] *Armentrout*, 332 Ga. App. at 372 (punctuation omitted).

[9] 392 U.S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

by probable cause."[10] And, thus, in order to analyze a defendant's claim that he was the victim of an illegal police detention, a court must "first categorize the police-citizen encounter at issue."[11]

Turning to the issues relevant to this case, OCGA § 40-8-76.1 (b) provides: "Each occupant of the front seat of a passenger vehicle shall, while such passenger vehicle is being operated on a public road, street, or highway of this state, be restrained by a seat safety belt approved under Federal Motor Vehicle Safety Standard 208." And it is well-settled that a law-enforcement officer "may initiate a traffic stop if he has a clear and unobstructed view of a person not restrained as required by OCGA § 40-8-76.1 (b)."[12] Additionally,

> [w]hen a police officer makes a traffic stop based on his having a clear view of the occupants of the front seat of a vehicle not wearing their seat belts, he is in the same situation as a police officer making a stop pursuant to *Terry*, except that the initial stop is based on probable cause,

---

[10] *Dryer v. State*, 323 Ga. App. 734, 736 (1) (747 SE2d 895) (2013) (punctuation omitted).

[11] *Id.* (punctuation omitted).

[12] *Davis v. State*, 318 Ga. App. 166, 168 (1) (733 SE2d 453) (2012) (punctuation omitted); *see Clark v. State*, 305 Ga. App. 699, 700 (1) (700 SE2d 682) (2010) (holding that officer's observation that defendant was not wearing a seat belt supported traffic stop).

not just a reasonable and articulable suspicion that an individual is, or is about to be, engaged in criminal activity.[13]

Furthermore, although

the probable cause for the initial stop cannot itself be used as probable cause for arrests based on violations of other Code sections, once a stop for a seat belt violation is made, the language of OCGA § 40-8-76.1 does not preclude an officer from conducting a reasonable inquiry and investigation to insure both his safety and that of others.[14]

Consequently, here, when the police officer observed that Robusto was not wearing a seatbelt, as the vehicle in which he was an occupant left the gas station parking lot, he was authorized to initiate the traffic stop.[15] And following this traffic stop, the

---

[13] *Horne v. State*, 318 Ga. App. 484, 489 (3) (733 SE2d 487) (2012) (punctuation omitted).

[14] *Id.* (punctuation omitted); *see* OCGA § 40-8-76.1 (f) ("Noncompliance with the restraint requirements of this Code section shall not constitute probable cause for violation of any other Code section.").

[15] *See Horne*, 318 Ga. App. at 489 (3) (holding that when the officer observed defendant's seatbelt traffic violation, he was authorized to initiate a traffic stop); *Clark*, 305 Ga. App. at 700 (1) (same).

police officer was certainly "authorized to make a reasonable inquiry and investigation[.]"[16]

Nevertheless, this does not conclude *our* inquiry. In order to be constitutionally permissible under the Fourth Amendment, an initial frisk must be "supported by a reasonable belief that [the defendant] was armed and presently dangerous, a belief which [the Supreme Court of the United States] has invariably held must form the predicate to a patdown of a person for weapons."[17] Specifically, under *Terry*, there is "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual."[18] Suffice it to say, the officer need not be "absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or

---

[16] *Horne*, 318 Ga. App. at 489 (3); *see Blitch v. State*, 281 Ga. 125, 126 (2) (636 SE2d 545) (2006) (noting that a traffic stop based on a seatbelt violation does not preclude an officer from then conducting a reasonable inquiry and investigation).

[17] *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (II) (100 SCt 338, LE2d 238) (1979); *accord Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010).

[18] *Terry*, 392 U.S. at 27 (III) (punctuation omitted); *accord Molina*, 304 Ga. App. at 96.

that of others was in danger."[19] But implicit in this rule of law is "the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances."[20] Thus, the State has the burden of proving that "the pat-down was lawful, by showing that a reasonably prudent man in the circumstances of the officer would be warranted in the belief that his safety or that of others was in danger."[21]

Additionally, the Supreme Court of the United States reiterated that this *Terry* analysis applies to both drivers and passengers in cars legally stopped for a traffic violation, holding, as an initial matter, that "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation."[22]

---

[19] *Terry*, 392 U.S. at 27 (III) (punctuation omitted); *accord Molina*, 304 Ga. App. at 96.

[20] *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002) (citation omitted); *accord Molina*, 304 Ga. App. at 96.

[21] *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008) (punctuation omitted); *accord Molina*, 304 Ga. App. at 95.

[22] *Arizona v. Johnson*, 555 U.S. 323, 327 (129 SCt 781, 172 LE2d 694) (2009); *Molina*, 304 Ga. App. at 96; *see Berkemer v. McCarty*, 468 U.S. 420, 439 (III) n.29

Significantly, the Court further concluded that "[t]o justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."[23]

In this case, the arresting officer testified that, upon approaching the vehicle in which Robusto was a passenger, he noticed a spoon with a white residue on it in the vehicle's center console and a newly opened box of Q-tips on the backseat, both of which were indicators of illegal intravenous drug use. The officer then testified that the driver would not stop moving, which made him nervous, and, therefore, he ordered the driver to exit the vehicle. But despite his alleged trepidation, instead of frisking the driver, the officer merely questioned him, and upon being informed by the driver that Robusto was in possession of illegal drugs, he ordered Robusto to exit the vehicle. At this point, the officer candidly acknowledged that the traffic stop had now become a drug investigation.

---

(104 SCt 3138, 82 LE2d 317) (1984) ("Most traffic stops, this Court has observed, resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*." (punctuation omitted)).

[23] *Johnson*, 555 U.S. at 327; *accord Molina*, 304 Ga. App. at 96.

Nevertheless, even a "particularized and objective basis for suspecting that a person is engaged in criminal activity is not sufficient to authorize a pat-down of the suspect for weapons."[24] Rather, as discussed *supra*, "[a] *Terry* pat-down is authorized when the officer reasonably believes that it is necessary to protect the officer from attack."[25] Here, the officer subsequently testified that after asking Robusto if he was in possession of any drugs, he performed a pat-down of Robusto for his safety, which resulted in the discovery of two syringes. But the officer further testified that such pat-downs were standard operating procedure for the APD and that he performs pat-downs on everyone he suspects of using intravenous drugs. And notably, although the officer testified generally that syringes can pose a danger, at no point did he testify that he believed *Robusto* might be dangerous. In fact, when Robusto's counsel pointedly asked the officer: "There was no reason to believe that Mr. Robusto was armed; correct?", the officer explicitly responded, "Correct." Given these particular circumstances, the State failed to present evidence that the officer had a reasonable, articulable, particularized basis for believing *Robusto* was armed or dangerous prior to performing his standard pat-down, and thus, it failed to meet its burden of

---

[24] *Edgell*, 253 Ga. App. at 777-78 (punctuation omitted).

[25] *Id.* at 778 (punctuation).

establishing that the pat-down was lawful.[26] Accordingly, the trial court did not err in granting Robusto's motion to suppress the evidence seized as a result of the pat-down.

For all these reasons, the trial court's judgment is affirmed.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[26] *See Molina*, 304 Ga. App. at 97-97 (holding that police officer who frisked defendant, after the traffic stop of a vehicle in which he was a passenger, did not have a reasonable suspicion that defendant was armed or dangerous, as necessary to support the frisk, given officer's testimony that frisk was conducted pursuant to officer's practice of routinely frisking passengers whenever a driver consented to a search of a vehicle); *Teal*, 291 Ga. App. at 489-90 (holding that evidence did not show that officer had a reasonable basis for concluding that defendant was armed or dangerous prior to performing pat-down in light of officer's testimony that he had no reason to believe that defendant was armed but that his general practice was to pat-down any person he asked to exit a car); *Edgell*, 253 Ga. App. at 777-78 (same).